No. 23-16147

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

**ANTHONY T. DEFRANCESCO,** *Plaintiff/Appellant,*
**vs.**
**ROBERT C. ROBBINS AND MICHAEL D. DAKE,**
*Defendants/Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
4:20-cv-00011-CKJ
THE HONORABLE CINDY K. JORGENSON

---

### APPELLEES' ANSWERING BRIEF

---

**COHEN DOWD QUIGLEY P.C.**
Daniel G. Dowd (ddowd@CDQlaw.com)
Rebecca van Doren (rvandoren@CDQlaw.com)
Cole K. Kubosumi (ckubosumi@CDQlaw.com)
2425 East Camelback Road
Suite 1100
Phoenix, Arizona 85016
602-252-8400
Fax: 602-252-5339
*Attorneys for Defendants/Appellees*

# TABLE OF CONTENTS

I. INTRODUCTION. .................................................................... 1

II. ISSUE PRESENTED. ............................................................... 2

III. STATEMENT OF THE CASE. ................................................... 2

IV. SUMMARY OF APPELLEES' ARGUMENTS. ............................ 5

V. STANDARD OF REVIEW. ......................................................... 6

VI. ARGUMENT. ........................................................................... 7

    A. Dismissal Based On Qualified Immunity Is Appropriate. ............. 7

    B. Qualified Immunity Bars Appellant's First Amendment Claim. ... 9

        1. The Qualified Immunity Doctrine. ................................. 9

        2. Appellant Did Not Plead The Violation Of A Constitutional Right. ........................................................... 12

        3. Appellant Has Not Identified Clearly Established Law Supporting His First Amendment Claim. ....................... 16

        4. The District Court Properly Found Appellant's Claim Was Not Based On Clearly Established Law. ............................ 31

        5. The District Court Properly Dismissed Appellant's Claim At The Pleadings Stage. ........................................ 36

        6. Appellant's Remaining Qualified Immunity Arguments Fail. ... 37

    C. Even If Not Barred By Qualified Immunity, Appellant Did Not Plead A Plausible First Amendment Retaliation Claim. ............... 40

        1. Dr. Dake Could Not Retaliate For Speech Of Which He Was Unaware. .................................................... 40

        2. The SAC Did Not Allege That President Robbins Retaliated Against Appellant. ...................................................... 42

VII. CONCLUSION. ...................................................................... 45

CERTIFICATE OF COMPLIANCE ............................................... 46

STATEMENT OF RELATED CASES ............................................. 47

i

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Adkins v. Bd. of Educ. of Magoffin Cty., Ky.,*
   982 F.2d 952 (6th Cir. 1993) ..................................................... *passim*

*Adler v. Pataki,*
   185 F.3d 35 (2nd Cir. 1999) ..................................................... *passim*

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,*
   988 F.2d 1157 (Fed. Cir. 1993) ............................................................ 7

*Agostino v. Simpson,*
   2008 WL 4906140 (S.D.N.Y. Nov. 17, 2008) ................................. 26-27, 29

*Anderson v. Creighton,*
   483 U.S. 635 (1987) ........................................................................... 10

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ...................................................................... 10, 31

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................... 43

*Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters,*
   459 U.S. 519 (1983) ............................................................................. 7

*Baker v. McCollan,*
   443 U.S. 137 (1979) ........................................................................... 12

*Bator v. State of Hawai'i,*
   39 F.3d 1021 (9th Cir. 1994) .............................................................. 24

*Behrens v. Pelletier,*
   516 U.S. 299 (1996) ............................................................................. 8

*Biggs v. Best, Best & Krieger,*
   189 F.3d 989 (9th Cir. 1999) ...................................................... 16, 25-26

*Board of Directors of Rotary Int'l v. Rotary Club of Duarte,*
   481 U.S. 537 (1987) ........................................................................... 21

*Boxill v. O'Grady,*
   935 F.3d 510 (6th Cir. 2019) .............................................................. 42

*Boyd v. Benton Cty.,*
   374 F.3d 773 (9th Cir. 2004) .............................................................. 19

*Broadrick v. Oklahoma,*
   413 U.S. 601 (1973) ........................................................................... 14

ii

*Cain v. Tigard-Tualatin Sch. Dist. 23J*,
    262 F. Supp. 2d 1120 (D. Or. 2003)............................................................ 27

*Capoeman v. Reed*,
    754 F.2d 1512 (9th Cir. 1985) ................................................................... 19

*Colonies Partners LP v. Cnty. of San Bernardino*,
    2018 WL 6074577 (C.D. Cal. July 12, 2018) ........................................... 22

*Cooper v. Cate*,
    2011 WL 5554321 (E.D. Cal. Nov. 15, 2011)............................................ 40

*Corkern v. Hammond City*,
    2013 WL 4434417 (E.D. La. Aug. 14, 2013) ........................................... 37

*Coszalter v. City of Salem*,
    320 F.3d 968 (9th Cir. 2003) ................................................................... 24

*Cresci v. Mohawk Valley Cmty. Coll.*,
    693 F. App'x 21 (2d Cir. 2017) ............................................................... 42

*DiRuzza v. Cnty. of Tehama*,
    206 F.3d 1304 (9th Cir. 2000) ................................................................. 20

*Dixon v. Lupis*,
    2021 WL 4391246 (D. Conn. Sept. 24, 2021) ......................................... 38

*Dowell v. Contra Costa Cnty.*,
    928 F. Supp. 2d 1137 (N.D. Cal. 2013) ................................................... 41

*Dunn v. Castro*,
    621 F.3d 1196 (9th Cir. 2010) ............................................................... 7, 8

*Elder v. Holloway*,
    510 U.S. 510 (1994) ................................................................................. 11

*Ellins v. City of Sierra Madre*,
    710 F.3d 1049 (9th Cir. 2013) .............................................................15, 20

*Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*,
    880 F.3d 450 (9th Cir. 2018) ................................................................... 30

*Evans v. Skolnik*,
    997 F.3d 1060 (9th Cir. 2021) ................................................................. 34

*Everitt v. DeMarco*,
    704 F.Supp.2d 122 (D. Conn. 2010) ....................................................... 29

*Fannon v. Patterson*,
    2014 WL 4273337 (S.D. Ohio Aug. 29, 2014).....................................26, 28

*Freeman v. County of Riverside*,
    2019 WL 7905733 (C.D. Cal. April 5, 2019)..................................... *passim*

*Gagne v. City of Galveston*,
    805 F.2d 558 (5th Cir. 1986) ................................................................... 24

*Gaines v. Wardynski*,
    871 F.3d 1203 (11th Cir. 2017) ........................................................5, 14, 28

*Gaspers v. Ohio Dep't of Youth Servs.*,
648 F.3d 400 (6th Cir. 2011) ...........................................................29, 30

*Giebel v. Sylvester*,
244 F.3d 1182 (9th Cir. 2001) .................................................................. 32

*Gray v. Bruneau-Grand View Sch. Dist. No. 365*,
2007 WL 1381785, (D. Idaho Mar. 27, 2007) .....................................26, 29

*Hammond v. City of Wilkes Barre*,
628 F. App'x 806 (3d Cir. 2015) .............................................................. 42

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) .................................................................................. 11

*Harris v. City of Circleville*,
583 F.3d 356 (6th Cir. 2009) ...............................................................38-39

*Hartman v. Moore*,
547 U.S. 250 (2006) ............................................................................15, 20

*Hartwell v. Houghton Lake Cmty. Sch.*,
755 F. App'x 474 (6th Cir. 2018) ........................................................30, 38

*Henley v. Tullahoma City Sch. Sys.*,
84 F. App'x 534 (6th Cir. 2003) ............................................................... 35

*Hill v. Rhude*,
556 F. Supp. 3d 1144 (D. Nev. 2021) ...................................................... 43

*Hope v. Pelzer*,
536 U.S. 730 (2002) ............................................................... 17, 18, 31, 33

*Hopson v. Alexander*,
71 F.4th 692 (9th Cir. 2023) ...................................................................... 5

*Horstkoetter v. Department of Public Safety*,
159 F.3d 1265 (10th Cir. 1998) ............................................................... 16

*Hunter v. Bryant*,
502 U.S. 224 (1991) .................................................................................... 8

*Hydrick v. Hunter*,
500 F.3d 978 (9th Cir. 2007) .................................................................... 36

*Isakhanova v. Muniz*,
2016 WL 1640649 (N.D. Cal. Apr. 26, 2016) ................................23, 29, 34

*Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*,
407 F.3d 1027 (9th Cir. 2005) .............................................................. 7, 41

*Johnson v. Duffy*,
588 F.2d 740 (9th Cir. 1978) .................................................................... 44

*Jones v. Fransen*,
857 F.3d 843 (11th Cir. 2017) .................................................................. 28

*Keates v. Koile*,
883 F.3d 1228 (9th Cir. 2018) ............................................................... 8, 39

iv

*Kee v. Mersch,*
  297 F.App'x 615 (9th Cir. 2008) ................................................................ 36

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) .................................................................... 39

*Lewis v. Eufaula City Bd. of Educ.,*
  922 F. Supp. 2d 1291 (M.D. Ala. 2012) ....................................... 22, 23, 28

*Lum v. Jensen,*
  876 F.2d 1385 (9th Cir. 1989) ................................................. 17, 18, 19, 25

*Malloy v. Hogan,*
  378 U.S. 1 (1964) ....................................................................................... 13

*Mattos v. Agarano,*
  661 F.3d 433 (9th Cir. 2011) .................................................................... 31

*Matusick v. Erie Cnty. Water Auth.,*
  757 F.3d 31 (2d Cir. 2014) ....................................................................... 30

*Mendoza v. Block,*
  27 F.3d 1357 (9th Cir. 1994) .................................................................... 32

*Merritt v. Countrywide Fin. Corp.,*
  583 F. App'x 662 (9th Cir. 2014) ........................................................ 42-43

*Millman v. Inglish,*
  461 F. App'x 627 (9th Cir. 2011) ............................................................. 43

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985) ..................................................................................... 9

*Moonin v. Tice,*
  868 F.3d 853 (9th Cir. 2017) .................................................................... 19

*Mullenix v. Luna,*
  577 U.S. 7 (2015) ....................................................................................... 10

*Nailon v. Univ. of Cincinnati,*
  715 F. App'x 509 (6th Cir. 2017) ........................................... 21, 22, 34, 35

*Naumovski v. Norris,*
  934 F.3d 200 (2d Cir. 2019) ..................................................................... 23

*Nieves v. Bartlett,*
  139 S. Ct. 1715 (2019) ............................................................................... 20

*Nittoli v. Morris Cnty. Bd. of Chosen Freeholders,*
  2007 WL 1521490 (D.N.J. May 22, 2007) ............................................... 38

*Nunes v. Arata, Swingle, Van Egmond & Goodwin (PLC),*
  983 F.3d 1108 (9th Cir. 2020) ............................................................ 17, 37

*Pearson v. Callahan,*
  555 U.S. 223 (2009) ..................................................................................... 9

*Peck v. Montoya,*
  51 F.4th 877 (9th Cir. 2022) ..................................................................... 43

*Perry v. Sindermann,*
  408 U.S. 593 (1972) ................................................................ 20

*Poe v. Haydon,*
  853 F.2d 418 (6th Cir. 1988) ................................................. 23

*Porter v. Bowen,*
  496 F.3d 1009 (9th Cir. 2007) ......................................... 18, 33

*Presley v. Bd. of Sch. Directors of Rankin Sch. Dist. No. 98,*
  2014 WL 1468087 n.1 (C.D. Ill. Apr. 15, 2014) ................... 38

*Raad v. Fairbanks N. Star Borough Sch. Dist.,*
  323 F.3d 1185 (9th Cir. 2003) ............................................... 24

*Reynaga Hernandez v. Skinner,*
  969 F.3d 930 (9th Cir. 2020) ................................................. 43

*Rico v. Ducart,*
  980 F.3d 1292 (9th Cir. 2020) ......................................... 17, 37

*Rizzo v. Dawson,*
  778 F.2d 527 (9th Cir. 1985) ........................................... 13, 37

*Roberts v. Ferry County,*
  2008 WL 5121606 (E.D. Wash. Dec. 5, 2008) ................... 26, 29

*Roberts v. U.S. Jaycees,*
  468 U.S. 609 (1984) ......................................................... 21, 30

*Robinson v. York,*
  566 F.3d 817 (9th Cir. 2009) ........................................... 15, 20

*Romero v. Kitsap Cnty.,*
  931 F.2d 624 (9th Cir. 1991) ........................................... 10, 33

*Rutman Wine Co. v. E. & J. Gallo Winery,*
  829 F.2d 729 (9th Cir. 1987) .................................................. 7

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.,*
  44 F.4th 867 (9th Cir. 2022) ................................. 6, 10, 12, 36

*Sampson v. Cnty. of Los Angeles,*
  974 F.3d 1012 (9th Cir. 2020) ......................................... 16, 36

*Saucier v. Katz,*
  533 U.S. 194 (2001) ............................................................ 8, 9

*Savage v. Gee,*
  665 F.3d 732 (6th Cir. 2012) ................................................. 21

*Saved Mag. v. Spokane Police Dep't,*
  19 F.4th 1193 (9th Cir. 2021) ............................................... 36

*Schwake v. Arizona Bd. of Regents,*
  821 F.App'x 768 (9th Cir. 2020) ........................................... 36

*Schwenk v. Hartford,*
  204 F.3d 1187 (9th Cir. 2000) ............................................... 32

*Serena H. v. Kovarie,*
    209 F. Supp. 2d 453 (E.D. Pa. 2002) ....................................... 27

*Shooter v. Arizona,*
    4 F.4th 955 (9th Cir. 2021) ....................................................... 36

*Singleton v. Wulff,*
    428 U.S. 106 (1976) ................................................................. 14

*Smith v. Frye,*
    488 F.3d 263 (4th Cir. 2007) ................................................... 28

*Sorrels v. McKee,*
    290 F.3d 965 (9th Cir. 2002) ................................................... 22

*Sowards v. Loudon County,*
    203 F.3d 426 (6th Cir. 2000) ................................ 5, 14, 29, 30

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ................................................. 44

*Stridiron v. Newburgh Enlarged City Sch. Dist.,*
    2023 WL 5586680 (S.D.N.Y. Aug. 29, 2023) ......................... 38

*Talley v. Brentwood Union Free Sch. Dist.,*
    2009 WL 1797627 (E.D.N.Y. June 24, 2009) ..................... 26, 29

*Taylor v. Riojas,*
    592 U.S. 7 (2020) ................................................................31-32

*Thomas v. Carpenter,*
    881 F.2d 828 (9th Cir. 1989) ............................................. 40, 43

*Thompson v. N. Am. Stainless, LP,*
    562 U.S. 170 (2011) ..........................................15, 21, 25

*Todd v. United States,*
    849 F.2d 365 (9th Cir. 1988) ..................................................... 9

*Tortu v. Las Vegas Metro. Police Dep't,*
    556 F.3d 1075 (9th Cir. 2009) ................................................... 7

*Ulrich v. City & Cnty of San Francisco,*
    308 F.3d 968 (9th Cir. 2002) ................................................... 40

*Vance v. Barrett,*
    345 F.3d 1083 (9th Cir. 2003) ................................................. 13

*Vazquez v. Cnty of Kern,*
    949 F.3d 1153 (9th Cir. 2020) ................................................... 6

*Vigil v. Tweed,*
    2019 WL 2411740 (D.N.M. June 7, 2019) ............................. 37

*Walker v. Jemez Mountain Sch. Dist.,*
    2020 WL 3402058 (D.N.M. June 19, 2020) ........................... 22

*Ward v. Athens City Bd. of Educ.,*
    187 F.3d 639 (6th Cir. 1999) ................................................... 35

*Wasson v. Sonoma Cnty. Junior Coll.,*
    203 F.3d 659 (9th Cir. 2000) ....................................................... 13, 20, 29-29

*Watison v. Carter,*
    668 F.3d 1108 (9th Cir. 2012) ................................................................... 41

*Weisbuch v. Cnty. of L.A.,*
    119 F.3d 778 (9th Cir. 1997) ..................................................................... 44

*White v. Pauly,*
    580 U.S. 73 (2017) ............................................................................... 17, 18

*Wilson v. Layne,*
    526 U.S. 603 (1999) ................................................................................... 17

*Wong v. United States,*
    373 F.3d 952 (9th Cir. 2004) ................................................................... 8, 9

*Wood v. Ostrander,*
    879 F.2d 583 (9th Cir. 1989) ..................................................................... 10

## Statutes

42 U.S.C. § 1983 ............................................................................... 12, 36

42 U.S.C. § 1988 ..................................................................................... 45

42 U.S.C. § 2000e–3(a) ........................................................................... 25

## Rules

Fed. R. Civ. P. 12 ....................................................................................... 7

Fed. R. App. P. 39 ................................................................................... 45

## I.    INTRODUCTION.

In March 2023, following this Court's affirmance of the dismissal of his discrimination and equal protection claims, Plaintiff/Appellant Anthony T. DeFrancesco filed a Second Amended Complaint ("SAC") against Robert C. Robbins, M.D., the President of the University of Arizona ("University" or "UA"), and Michael D. Dake, M.D., the Senior Vice President of UA Health Sciences ("UAHS"). Appellant alleged that Dr. Dake terminated Appellant's employment with UAHS in retaliation for Appellant's husband's opposition to President Robbins' decision to hire Dr. Dake.  Appellees moved to dismiss the SAC because it again failed to allege facts sufficient to state a plausible First Amendment retaliation claim and was, in any event, barred by qualified immunity.  The District Court dismissed the SAC with prejudice on the basis of qualified immunity, ruling that it had "found no persuasive law that clearly establishes a First Amendment retaliation claim may be made by one person for the protected speech of another person based on a close personal relationship between the two." [Appellant's Excerpts of Record ("ER") at ER-19.]

The District Court's decision should be affirmed. Appellant's First Amendment claim is barred by qualified immunity because Appellant is unable to identify a clearly established First Amendment right he held that could have been violated by his termination.  Although not reached by the District Court, the SAC further failed because Appellant does not allege retaliatory conduct by President Robbins or facts showing that Dr. Dake was even aware that Gregg Goldman, Appellant' husband and the University's Chief Financial Officer, had made the statements that the District Court found could be protected speech.  The SAC therefore failed to state a claim upon which relief could be granted.

1

## II.    ISSUE PRESENTED.

Appellant identifies a single issue: "Did the district court err in dismissing DeFrancesco's amended complaint on qualified immunity grounds because it was clearly established that harassing and firing DeFrancesco in retaliation for his husband's protected speech activity would violate the First Amendment?"  This framing of the issue is deficient in at least two ways.  First, it presumes that retaliation is actionable as a violation of the First Amendment without being tethered to a specific First Amendment right held by Appellant that was impacted by Appellees' conduct.  It is not.  Appellant does not argue, or provide binding authority to support, that he personally had a First Amendment right of free speech, or any other specific First Amendment right, that was violated by his termination.  Appellant studiously avoids identifying the specific First Amendment right at issue because doing so cements application of qualified immunity.  Any First Amendment free speech claim (and none exists on these facts) would belong to Goldman – the speaker, not to Appellant.  Further, Appellant has abandoned his prior unsuccessful attempt to assert a violation of an alleged First Amendment right of intimate association.

Second, the issue framed by Appellant does not include the other grounds that Appellees cited to support dismissal of Appellant's claim, some of which Appellant affirmatively addressed in his Opening Brief.  These additional grounds provide an independent basis upon which to affirm the dismissal of the SAC.

## III.    STATEMENT OF THE CASE.

Throughout his Statement of the Case, Appellant misstates both the allegations in the SAC and the procedural history of this dispute.  Appellant now employs incendiary language not contained in the SAC to cast Appellees in the most negative light possible and to try to enhance the purportedly protected nature of Goldman's

2

alleged speech. For example, Appellant states that the SAC alleged that President Robbins "rigged the hiring process" so that Dr. Dake would be hired as the Senior Vice President of UAHS. [Opening Brief ("OB"), p. 15. *See also* OB, pp. 11, 27.] The term "rigged" never appeared in the SAC. Viewed in the light most favorable to Appellant, the SAC alleged only that President Robbins favored Dr. Dake for the position and moved him through the process against the recommendations of the advisory search committee. The SAC did not allege that President Robbins was required to appoint a search committee or follow the search committee's recommendation, or that the search committee had any authority. Indeed, the SAC conceded that President Robbins made the "ultimate" hiring decision [ER-24, ¶ 27] and did not allege that President Robbins violated any University or Arizona Board of Regents policy, rule or regulation by hiring the candidate he preferred.

Appellant alleges now that President Robbins "promised Dake the SVP job before the University's formal recruitment process even began." [OB, p. 15.] However, the SAC only alleged that President Robbins told those at the final meeting that he had "in essence" already offered Dr. Dake the job, <u>not</u> that he did so before the process began. [*See* ER-27-28, ¶ 43.] Now, Appellant states that 1) the search committee President Robbins put together was a "sham" [OB, p. 15]; 2) Goldman was not responsible for "evaluating the qualifications" of executives within UAHS [OB, p. 16]; and 3) Dr. Dake took action against Appellant to "get revenge for Goldman's actions." [OB, p. 21.] None of these allegations were in the SAC.

In describing the District Court's decision dismissing his original First Amendment claim, Appellant falsely asserts that the District Court identified sixteen cases that "support[ed] the proposition that a plaintiff may bring a First Amendment retaliation claim for the protected activity of his spouse." [OB, p. 24.] The District

3

Court merely cited the cases that Appellant relied on for that proposition; the District Court did not make that finding itself. [ER-51-52.] Appellant's statement that the District Court "conceded that all of the cases have found a cause of action for spousal retaliation based on free speech to violate the First Amendment" [OB, p. 25] is false. No such "concession" exists.

Appellant contends that the District Court "agreed with DeFrancesco that these amended allegations stated a viable First Amendment claim that Appellees 'harassed and retaliated against him "because his husband[, Goldman,] exercised his First Amendment-protected right of free speech by opposing President Robbins' decision to hire Dake as Senior Vice President of UAHS."'" [OB, p. 28.] The District Court only found that the SAC plausibly alleged protected speech, the first element of a First Amendment free speech retaliation claim. [ER-15 ("For purposes of this Order, the Court finds that the SAC alleges Plaintiff's husband's speech was protected under the First Amendment."). *See also* ER-10 (setting forth the three elements of a First Amendment retaliation claim).] The District Court did not find the SAC plausibly alleged that Dr. Dake terminated Appellant in retaliation for his husband's speech, or that President Robbins took any retaliatory action toward Appellant.

Appellant mischaracterizes the District Court's decision as finding multiple cases, "including Circuit cases," that denied qualified immunity under similar circumstances. [OB, p. 29.] Actually, the District Court cited a single unpublished district court case for the proposition that "the First Amendment 'may also be violated where the speech that invoked the government's retaliatory response was not made by the plaintiff [], but rather by a person in a close relationship with the plaintiff, and the government retaliated against the plaintiff for [his] perceived association with

the other person and that person's speech.'" [ER-10 (*citing Freeman v. County of Riverside*, 2019 WL 7905733, at *6 (C.D. Cal. April 5, 2019)).] The District Court discussed the three other cases Appellant identifies, *Adler v. Pataki*, 185 F.3d 35 (2nd Cir. 1999), *Adkins v. Bd. of Educ. of Magoffin Cty., Ky.*, 982 F.2d 952 (6th Cir. 1993), and *Sowards v. Loudon County*, 203 F.3d 426 (6th Cir. 2000), only because Appellant relied on them, and it found that "[t]hese cases are distinguishable because they are based on the First Amendment right of association, not free speech." [ER-16.]

Appellant further alleges that the District Court "imposed a limitation that the only 'prior case law' capable of clearly establishing a constitutional rule is that of 'the Supreme Court of the United States, the Ninth Circuit, or the highest court in the relevant state …" because it cited the Eleventh Circuit case of *Gaines v. Wardynski*, 871 F.3d 1203 (11th Cir. 2017). [OB, p. 30.] However, the District Court properly acknowledged that in the Ninth Circuit, a right can be clearly established by "a robust consensus of cases of persuasive authority that clearly prohibits the officer's conduct in the particular circumstances, with a high degree of specificity." [ER-14 (*citing Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023)).]

## IV.   SUMMARY OF APPELLEES' ARGUMENTS.

The District Court's grant of qualified immunity should be affirmed. Appellant does not identify the specific First Amendment right he contends was violated; instead, he simply characterizes his claim as "First Amendment retaliation." Contrary to Appellant's contention, this failure is not irrelevant, as a claim for unlawful retaliation does not exist without a specifically targeted constitutional right <u>held</u> <u>by</u> <u>the</u> <u>claimant</u>. There is no abstract First Amendment right to be free from retaliation. It is also impossible to determine whether a First Amendment right is clearly established without identifying the right at issue. In other words, a public employee cannot

reasonably be found to have violated a clearly established right if the right itself is undefined.

Moreover, it was not clearly established in 2019 that alleged retaliation against a speaker's family member violates a First Amendment right of the family member. The assortment of cases on which Appellant relies primarily involve speakers asserting their own free speech rights, family members asserting the right of intimate association, or claims brought under Title VII, none of which are applicable here. The few decisions that actually address a family member's First Amendment rights under somewhat analogous circumstances do not constitute authority binding on the District Court, do not create a "robust consensus," and do not come close to demonstrating the constitutional right is so clearly established as to defeat qualified immunity.

Finally, the SAC failed for reasons not reached by the District Court. Appellant did not allege that President Robbins participated in the harassment or termination of Appellant, which is required to impose liability on him for First Amendment retaliation. Appellant also did not allege facts reflecting that Dr. Dake was aware of the specific statements by Goldman that the District Court found could be protected, which defeats any notion that Dr. Dake retaliated in response to those protected statements. The dismissal can be affirmed on these independent bases.

## V.     STANDARD OF REVIEW.

Appellees agree that this Court reviews the dismissal of Appellant's claim on the basis of qualified immunity *de novo*.  *See Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 878 (9th Cir. 2022) (*citing Vazquez v. Cnty of Kern*, 949 F.3d 1153, 1159 (9th Cir. 2020)).  However, Appellant's citation to the Court's obligation to view the claim in the light most favorable to Appellant is inapposite to the qualified immunity

6

analysis. Whether the right Appellant seeks to assert was clearly established is a pure question of law, not impacted by a favorable construction of Appellant's factual allegations. *See Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (holding that the "clearly established" prong of the qualified immunity analysis is "solely a question of law for the judge") (*quoting Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009)).

If the Court reaches Appellees' additional arguments supporting the dismissal of the SAC, construing the allegations in the light most favorable to Appellant does not cure the critical gaps in his pleading. The standard does not allow a court to assume or insert factual allegations that do not exist. *See, e.g., Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005) ("Although we assume the truth of the facts alleged in the complaint, we cannot assume any facts necessary to the Appellants' claim that they have not alleged.") (*citing Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983)).

## VI. ARGUMENT.

### A.   Dismissal Based On Qualified Immunity Is Appropriate.

"The purpose of F.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). The rule eliminates claims that are "fatally flawed in their legal premises and destined to fail," avoiding "the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

"[T]he Supreme Court has 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Dunn*, 621 F.3d at 1199

(*quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Dismissal based on qualified immunity can be appropriate at the pleadings stage because qualified immunity gives public officials the right to avoid the burdens of both trial and pretrial matters such as discovery. *Id.* (*citing Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)).

The dismissal of the SAC based on qualified immunity was appropriate and fully respectful of this Court's comment in its earlier decision that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." [ER-39 (*quoting Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018)).] The "special problems" language came from *Wong v. United States*, 373 F.3d 952, 956-57 (9th Cir. 2004). However, the concerns raised in *Wong* are not present here.

In *Wong*, this Court recognized that "government officials are entitled to raise the qualified immunity defense immediately, on a motion to dismiss the complaint, to protect against the burdens of discovery and other pre-trial procedures." 373 F.3d at 957. When *Wong* was decided, a qualified immunity defense could not be resolved "without first deciding the scope of the constitutional rights at stake." *Id.* (*citing Saucier v. Katz*, 533 U.S. 194, 200 (2001)). "The unintended consequence of this confluence of procedural doctrines is that the courts may be called upon to decide far-reaching constitutional questions on a nonexistent factual record." *Id.* Moreover, because the denial of qualified immunity is immediately appealable, defendants might be motivated to expend resources to appeal the denial of qualified immunity on the basis of "rather sketchy facts we must presume true in this litigation," while awaiting the development of facts in discovery might show plaintiff's claim to be baseless and obviate the need to address any constitutional issues. *Id.* Accordingly, the *Wong* court cautioned against deciding constitutional issues unnecessarily at the dismissal stage.

In 2009, however, the United States Supreme Court decided *Pearson v. Callahan*, which held the elements of qualified immunity could be addressed in either order, allowing courts to avoid making constitutional law where it was not necessary to do so. 555 U.S. 223, 241 (2009) (noting that "[a]dherence to *Saucier*'s two-step protocol departs from the general rule of constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable.") (internal alteration and quotations omitted). This change obviated the concerns underlying to *Wong*'s "special problems" language.

Appellant repeatedly references this Court's earlier "special problems" comment, and argues that it was inappropriate for the District Court to decide qualified immunity at the pleadings stage. [OB, pp. 11, 26, 51-52]. However, the District Court did not decide constitutional questions, and Appellant does not even try to explain how the qualified immunity analysis might change on a more developed factual record. It would not.

### B. Qualified Immunity Bars Appellant's First Amendment Claim.

The District Court properly dismissed the SAC on the grounds that Appellees are protected by qualified immunity. It is not clearly established that the First Amendment is violated by alleged retaliation against the husband of the speaker.

### 1. The Qualified Immunity Doctrine.

The United States Supreme Court has held that "[q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson*, 555 U.S. at 237 (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The doctrine protects public employees in their individual capacities from suit under Section 1983 unless the facts alleged demonstrate that the employee's conduct violated a clearly established constitutional or federal statutory right. *See, e.g., Todd v. United States*, 849 F.2d 365, 371

9

(9th Cir. 1988) (holding that because defendants did not violate plaintiff's "clearly established First or Fifth Amendment right," defendants were immune from suit). As the Supreme Court has explained, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alterations in original). The "statutory or constitutional question" must be "beyond debate." *Id.* Moreover, the "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotations omitted). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotations omitted).

This Court has held that a government official is entitled to qualified immunity unless the plaintiff "pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Sabra*, 44 F.4th at 886 (*quoting Ashcroft*, 563 U.S. at 735). "The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991). While the District Court chose to focus solely on the second prong, an analysis of Appellant's claim demonstrates that he cannot satisfy either element.

Appellant emphasizes that "*Reasonable* is the operative standard: to be entitled to qualified immunity, an official must show that 'as a reasonable officer he could have believed his actions ... were constitutional even if they were not.'" [OB, p. 12 (*quoting Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir. 1989)) (emphasis in original).]

Appellant inappropriately tries to shift the focus by contending that Appellees' conduct was not reasonable because no authority holds that "an individual does not have a constitutional right to be free from retaliation for a spouse's protected speech." [*Id.*, pp. 12-13.] Later in his brief, Appellant makes the same argument, contending that the District Court did not explain how the cases Appellant cited "could have suggested to a reasonable officer in Appellees' shoes that their conduct towards DeFrancesco was permissible." [OB, p. 48.] These contentions misstate Appellant's clear burden. Appellees are not required to demonstrate based on existing case law that their conduct was permissible. If that was the standard, public officers would be unable to act absent a court ruling authorizing their actions for fear of liability. *See Elder v. Holloway*, 510 U.S. 510, 514 (1994) ("The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'") (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). It is unequivocally settled that qualified immunity applies unless Appellant demonstrates that Appellees' alleged conduct violated a clearly established constitutional right. Appellant's attempt to relieve himself of the burden of identifying a specific right that it is clearly established is improper.[1]

> …

> …

---

[1]   Appellant erroneously contends later in his brief that the District Court somehow "turned the doctrine of qualified immunity into absolute immunity." [OB, p. 51.] The District Court did not find that Appellees could <u>never</u> be liable for First Amendment retaliation where the speaker was not the plaintiff. Instead, the decision was limited to a finding that, at the time of Appellant's termination, clearly established law did not make Appellees' alleged conduct unconstitutional.

### 2.  Appellant Did Not Plead The Violation Of A Constitutional Right.

To defeat qualified immunity, Appellant is obligated to identify the constitutional right that he contends was violated. *See Sabra*, 44 F.4th at 886.[2] Appellant titled his claim "First Amendment Retaliation (42 U.S.C. § 1983)." [ER-31.] He referenced the First Amendment in the SAC only twice:

> This case is about Defendants' retaliation against Plaintiff in violation of the First Amendment to the United States Constitution by harassing, and ultimately terminating, Plaintiff because his husband, also a high-level University of Arizona executive, opposed and stood up to University President Robbins' decision to hire Defendant Michael D. Dake as Senior Vice President of UAHS through a corrupt process.

[ER-21, ¶ 2.]

> Defendants acted under color of State law when they harassed and retaliated against Plaintiff because his husband exercised his First Amendment—protected right of free speech by opposing President Robbins' decision to hire Dake as Senior Vice President of UAHS.

[ER-31-32, ¶ 70.]  Neither of these allegations identifies a specific First Amendment right of <u>Appellant</u> that was supposedly violated by Appellees' actions.  In the briefing before the District Court on Appellees' Motion to Dismiss, Appellant, again, generally defined his claim as First Amendment retaliation based on the protected speech of his husband.  [*See* Appellees' Supplemental Excerpts of Record ("SER") at SER-25 (describing his claim as "retaliation against a person for the protected speech of his or her spouse"); SER-35 ("Multiple federal appellate and trial courts have squarely held

---

[2]     The identification of the constitutional right at issue is also necessary to determine whether Appellant has stated a claim under 42 U.S.C. § 1983.  Before liability under Section 1983 can be imposed, "it is necessary to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan*, 443 U.S. 137, 140 (1979).  "The first inquiry in any § 1983 suit … is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Id.*

that plaintiffs have a right to be free from retaliation based on the protected speech of their spouse.").] Beyond multiple and generic references to "First Amendment retaliation," Appellant never identifies the specific First Amendment right at issue.

The First Amendment does not, as Appellant appears to assert, provide a general protection against "retaliation." The First Amendment affords and protects multiple constitutional rights, including freedom of speech, freedom of religion, freedom of the press, expressive association, the right to petition the courts, and freedom of assembly. *See, e.g., Malloy v. Hogan*, 378 U.S. 1, 5 (1964) (citing a series of Supreme Court decisions that "hold immune from state invasion every First Amendment protection for the cherished rights of mind and spirit—the freedoms of speech, press, religion, assembly, association, and petition for redress of grievances"). A retaliation claim requires the plaintiff to allege "both that the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985). *See also Vance v. Barrett*, 345 F.3d 1083, 1088 (9th Cir. 2003) ("As a prerequisite to discerning a constitutional violation for an unconstitutional condition or unconstitutional retaliation, however, we must first examine the validity of the underlying alleged constitutional rights."); *Wasson v. Sonoma Cnty. Junior Coll.*, 203 F.3d 659, 663 (9th Cir. 2000) ("A First Amendment retaliation claim is not a wrongful termination claim. Rather, a First Amendment retaliation claim seeks to vindicate a public employee's exercise of free speech rights … .").

Consistent with this guidance, in addressing First Amendment retaliation cases, courts are careful to first define the specific First Amendment right allegedly impacted by the alleged conduct. For example, in *Adkins*, the Sixth Circuit Court of Appeals analyzed a spouse's claim that she was terminated in retaliation for the actions of her

husband in violation of her First Amendment right of intimate association: "Although Mrs. Adkins had no property right to continued employment she had a liberty interest in not being denied employment for exercising her First Amendment right to freedom of association." 982 F.2d at 955. Similarly, in *Adler*, the Second Circuit Court of Appeals stated: "Though the matter is not free from doubt, we think a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association." 185 F.3d at 44. In *Sowards*, 203 F.3d at 432, the Sixth Circuit analyzed separately plaintiff's claims that defendant's actions violated her First Amendment rights to political and intimate association. And, in *Gaines*, 871 F.3d at 1206, plaintiff asserted violations of both her free speech and intimate association rights under the First Amendment, contending that she was denied a promotion in retaliation for statements made by her father that were critical of her employer. The Eleventh Circuit Court of Appeals evaluated each right separately, and found that qualified immunity barred both claims. *Id.* at 1212, 1214.

Here, Appellant does not identify how his own First Amendment rights were impacted by his termination. The only right he references is a free speech right purportedly exercised by his husband, who is not a party to this action. [ER-31-32, ¶ 70.] However, a plaintiff cannot vicariously assert a constitutional right belonging to someone else. *See Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973) ("[C]onstitutional rights are personal and may not be asserted vicariously."). *Accord Singleton v. Wulff,* 428 U.S. 106, 113 (1976) ("Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation."). Moreover, although Appellant originally asserted that his termination violated his First Amendment right of association, those

references did not appear in the SAC, as noted by the District Court.  [SER-12, ¶¶ 65, 66; ER-8.][3]

To try to overcome this fatal flaw, Appellant improperly attempts to merge an entire body of First Amendment retaliation case law to create a generalized "First Amendment" right to be free from retaliation for the speech of his husband.  In arguing that this right is clearly established, Appellant relies on cases involving 1) the speakers asserting their own free speech rights (*e.g., Hartman v. Moore*, 547 U.S. 250 (2006), *Ellins v. City of Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013), *Robinson v. York*, 566 F.3d 817 (9th Cir. 2009)); 2) plaintiffs asserting that actions by the state violated their right of intimate association with the speakers (*e.g., Adler, Adkins, Sowards*); and 3) retaliation claims asserted under Title VII (*e.g., Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011)), none of which apply here.

The District Court did not specifically analyze this issue.  Instead, it cited to the unpublished district court decision in *Freeman* for the notion that "the First Amendment 'may also be violated where the speech that invoked the government's retaliatory response was not made by the plaintiff [], but rather by a person in a close relationship with the plaintiff, and the government retaliated against the plaintiff for [his] perceived association with the other person and that person's speech.'" [ER-10 (alterations in original).]  However, *Freeman* does not assist Appellant.  There, the plaintiffs included both the husband, who engaged in the protected speech, and his wife, who was the target of the retaliation.  2019 WL 7905733 at *1.  The court denied qualified immunity because it found that "there are cases recognizing a cause of action

---

[3]    Appellant does not challenge on appeal the District Court's finding that Appellant had not asserted the violation of a First Amendment right of association. [ER-8.]

where an individual has suffered retaliation for his or her perceived association with the speech of a close family member." *Id.* at *5 (*citing Biggs v. Best, Best & Krieger*, 189 F.3d 989 (9th Cir. 1999), and *Horstkoetter v. Department of Public Safety*, 159 F.3d 1265 (10th Cir. 1998)). In *Biggs*, the non-speaking family members were asserting derivative claims, contending that they were injured by retaliation directed toward the speaker. 189 F.3d at 998 (holding that injury alleged by family members gave them standing only to assert the same claims brought by the speaker, and that once the speaker's claim was dismissed, the family members' claims failed as well). In *Horstkoetter*, the court held that the plaintiff husband, a police officer, could not be disciplined for refusing to remove a political sign placed by his wife on property they both owned. 159 F.3d at 1276. The court held that "[a] state highway patrol organization cannot, through a policy restricting political speech, require a trooper to do what property law does not allow him to do," and it specifically stated that such a policy would violate the <u>husband's</u> constitutional rights. *Id.* Neither of these cases supports Appellant's claim. Appellant's failure to identify a cognizable right, by itself, defeats his claim.[4]

### 3. Appellant Has Not Identified Clearly Established Law Supporting His First Amendment Claim.

As *Pearson* permits, the District Court focused solely on the second prong of the qualified immunity analysis: whether Appellees violated Appellant's clearly established constitutional right at the time of the challenged conduct. In other words, based on the existing case law, did Appellees have fair warning that terminating Appellant in retaliation for his husband's speech would violate <u>Appellant's</u> First Amendment rights. *See Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020) (holding that when considering qualified immunity, "we ask 'whether the state

---

[4]     Appellant's reliance on *Freeman* is also misplaced because it was issued in April 2019, months <u>after</u> the alleged retaliation against Appellant had supposedly begun.

16

of the law [at the time of the officials' conduct] gave [them] fair warning that their alleged [conduct] was unconstitutional.'") (*quoting Hope v. Pelzer*, 536 U.S. 730, 741 (2002)) (alterations in original).   The District Court properly found that there is no clearly established law supporting the claim Appellant seeks to assert.

> a.   Clearly Established Law Requires Binding Precedent Or A Robust Consensus Of Persuasive Authority.

For public officials to have fair warning, "the rule must be 'settled law,' meaning it is 'dictated by controlling authority or a robust consensus of cases of persuasive authority.'" *Nunes v. Arata, Swingle, Van Egmond & Goodwin (PLC)*, 983 F.3d 1108, 1112 (9th Cir. 2020).   Appellant concedes there is no controlling authority from the Supreme Court or the Ninth Circuit giving Appellees fair warning that Appellant had a First Amendment right under the circumstances alleged.   [OB, p. 38 (arguing the existence of a "robust consensus" of case law).]   Further, a robust consensus does not exist if the right asserted remains subject to debate.   *See, e.g., Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").   A robust consensus also cannot be established through a mere handful of cases from other jurisdictions.   *See Rico v. Ducart*, 980 F.3d 1292, 1301 (9th Cir. 2020) ("[T]he single published opinion …, repeated in one unpublished disposition, combined with the other three cases from our sister circuits about constant illumination, cannot form the basis for a 'robust consensus.'").

Appellant attempts to lessen the test for providing fair notice to Appellees by citing cases for the proposition that "a right can be 'clearly established' without binding precedent on all fours." [OB, p. 36 (*citing Hope*, 536 U.S. at 741, *White v. Pauly*, 580 U.S. 73, 79 (2017), and *Lum v. Jensen*, 876 F.2d 1385, 1387 (9th Cir. 1989))].   The

plaintiff in *Hope* alleged the use of cruel and unusual punishment in violation of the Eighth Amendment. 536 U.S. at 733. *White* involved an allegation of excessive force by law enforcement in violation of the Fourth Amendment. 580 U.S. at 77. In both cases, the rights at issue were already recognized, such that the only question was whether the specific conduct violated those rights, *i.e.*, "the mere application of settled law to a new factual permutation." *Porter v. Bowen*, 496 F.3d 1009, 1026 (9th Cir. 2007). Accordingly, both *Hope* and *White* considered whether defendants' conduct was similar enough to conduct previously found unconstitutional that the prior case law provided defendants the required fair warning. In these situations, courts apply the principle that there does not need to be prior precedent directly on point factually because the circumstances under which the Fourth and Eighth Amendments issues arise can vary so greatly.

The key question here on the issue of fair warning is whether a First Amendment right has even been recognized under circumstances similar to those alleged by Appellant. This difference makes *Lum* more instructive. There, plaintiff alleged that the termination of his civil service employment violated his Fourteenth Amendment substantive due process rights. 876 F.2d at 1386. Finding no binding precedent on this issue from the Supreme Court or the Ninth Circuit, the court surveyed case law from other jurisdictions, but was unable to identify a consensus recognizing such a right:

> In our view, the absence of binding precedent in this circuit plus the conflict between the circuits is sufficient, under the circumstances of this case, to undermine the clearly established nature of a right. … At the time of Lum's termination, there was a conflict among the circuits that had reached the issue and the law was unsettled in this and the remaining circuits. … [W]e are unable to say that the precedent in favor of a substantive due process right was sufficient to overcome the otherwise unsettled and contradictory case law. Thus, we conclude that there was

no clearly established constitutional right to substantive due process protection of continued public employment.

876 F.2d at 1389.

The rationale in *Lum* applies here. No controlling authority from the Supreme Court or the Ninth Circuit gave Appellees fair warning that Appellant had a First Amendment right that could have been violated under the circumstances alleged. When the focus is (as it must be) on cases involving alleged retaliation against the plaintiff based on the First Amendment-protected activities of the plaintiff's family member, no consensus emerges that is sufficiently robust to deny Appellees qualified immunity.

Appellant further argues that "*any* decisional law can provide fair warning/notice, 'including relevant decisions of other circuits, state courts, and district courts.'" [OB, p. 37 (*quoting Moonin v. Tice*, 868 F.3d 853, 868 (9th Cir. 2017)) (emphasis in original).] However, Appellant only states the portion of the test favorable to his position. *Moonin* relied on *Boyd v. Benton Cty.*, 374 F.3d 773 (9th Cir. 2004), which held that in the absence of binding Supreme Court or Ninth Circuit authority, "we may inquire whether the Ninth Circuit or Supreme Court, at the time the out-of-circuit opinions were rendered, would have reached the same results." *Id.* at 781. *See also Capoeman v. Reed*, 754 F.2d 1512, 1515 (9th Cir. 1985) ("Where, as here, there are relatively few cases on point, and none of them are binding, an additional factor that may be considered in ascertaining whether the law is 'clearly established' is a determination of the likelihood that the Supreme Court or this circuit would have reached the same result as courts which had previously considered the issue."). Appellant offers no analysis demonstrating that the Supreme Court or the Ninth

Circuit would have reached the same result as the very few cases supportive of his claim.

> b.    <u>No Robust Consensus Supports A Free Speech Retaliation Claim Asserted By A Non-Speaker.</u>

To try to show a robust consensus of persuasive authority, Appellant begins with the "first principal" that the government cannot engage in retaliation in response to First Amendment-protected conduct. [OB, pp. 38-39.] Each case Appellant cites for this concept involved retaliation against the speaker. *See Hartman*, 547 U.S. at 256 (criminal charges allegedly brought in retaliation for speech); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (professor contended his contract was not renewed in response to his exercise of free speech); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (arrestee claimed he was arrested for his speech); *Ellins*, 710 F.3d at 1065 (alleged delay in pay increase in retaliation for plaintiff's vote of no-confidence); *Robinson*, 566 F.3d at 826 (plaintiff denied promotion in retaliation for his reports of misconduct); *DiRuzza v. Cnty. of Tehama*, 206 F.3d 1304, 1306 (9th Cir. 2000) (deputy sheriff alleged retaliation for her political support of sheriff's opponent). These cases are unhelpful, as Appellant was <u>not</u> the speaker. No reasonable official would know based on this body of law that the termination of an employee who did <u>not</u> engage in protected speech would violate a First Amendment free speech right of that employee. *See, e.g., Wasson*, 203 F.3d at 662 ("[T]here can be no First Amendment cause of action where there was no speech by the plaintiff[.]").

Next, Appellant asserts that "courts" have applied these same principles in cases where the speakers' family members were the victims of the retaliation rather than the speakers themselves. [OB, pp. 39-40.] He contends this conclusion is mandated by Supreme Court precedent recognizing that the First Amendment

safeguards familial relationships from undue intrusion, citing cases addressing the right of intimate association. [*Id.*, p. 40 (*citing Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984), *Adkins v. Bd. of Educ. of Magoffin Cty., Ky.*, *supra*, and *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537 (1987)).] Appellant abandoned a right of association First Amendment claim, and these cases are inapposite to a speech-based First Amendment claim.

Appellant cites a single unpublished Sixth Circuit case that analyzed alleged retaliation against a family member as a claimed violation of the right of free speech. [OB, p. 41 (*citing Nailon v. Univ. of Cincinnati*, 715 F. App'x 509 (6th Cir. 2017)).] In *Nailon*, the Sixth Circuit found it clearly established that the termination of a public university employee based on complaints of racial discrimination made by her niece (a student at the same university), constituted a violation of the First Amendment. It began with the elements of a First Amendment retaliation claim: "[T]he plaintiff must show: (1) that the speech was protected by the First Amendment; (2) she suffered an adverse employment action; and (3) the adverse action was motivated at least in part in response to the exercise of her constitutional rights." 715 F. Appx at 513-14 (*citing Savage v. Gee*, 665 F.3d 732, 738 (6th Cir. 2012)). However, after stating the elements, the court did not address the fact that the third element requires a direct link between the retaliation and plaintiff's exercise of <u>her</u> constitutional rights, not free speech rights exercised by non-parties. Instead, the court evaluated only whether a "connection" existed between the protected speech and the retaliation. *Id.* at 514. The court further relied on case law interpreting Title VII as supporting a constitutional violation under the facts alleged. *Id.* at 526 (*citing Thompson v. N. Am. Stainless, LP*, 562 U.S. at 174-75). The suspect analysis in this unpublished decision

does not support Appellant's argument that the right at issue was clearly established in 2019.[5]

Within the Ninth Circuit, Appellant identifies two unpublished district court cases that supposedly support his speech-based retaliation claim.[6] Neither actually does. As discussed above, the plaintiffs in *Freeman* included both the speaker and his spouse, and the court's analysis relied on two other cases where both the speakers and their spouses were plaintiffs. *See* 2019 WL 7905733 at **1, 5. *Freeman* also adopted the reasoning of *Lewis v. Eufaula City Bd. of Educ.*, 922 F. Supp. 2d 1291, 1302 (M.D. Ala. 2012):

> Often in First Amendment retaliation cases, the government is claimed to have retaliated against the plaintiff for her own speech; but the First Amendment may also be violated where the speech that invoked the government's retaliatory response was not made by the plaintiff herself, but rather by a person in a close relationship with the plaintiff, and the government retaliated against the plaintiff for her **perceived association with the other person and that person's speech**.

---

[5]    Only two cases outside of the Sixth Circuit have cited *Nailon*, and both rejected the First Amendment retaliation claims being asserted. *See Walker v. Jemez Mountain Sch. Dist.*, 2020 WL 3402058, at *8 (D.N.M. June 19, 2020) (rejecting First Amendment retaliation claim based on retaliation against plaintiffs for the protected speech of a non-party, noting that "[t]hough *Nailon* appears to support Plaintiffs' position, one unpublished case from another circuit does not create a well-established right"); *Colonies Partners LP v. Cnty. of San Bernardino*, 2018 WL 6074577, at *9 (C.D. Cal. July 12, 2018) (identifying conflicting authority on the third-party retaliation issues, and noting that "it is not clear whether, as a matter of law, Plaintiff can state a retaliation claim for alleged retaliatory actions exacted upon third persons").

[6]    Appellant's heavy reliance on unpublished cases weighs in favor of finding qualified immunity. "[I]t will be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, we can conclude that the law was clearly established on the basis of unpublished decisions only." *Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir. 2002).

*Id.* at *6 (*quoting Lewis*) (emphasis added). The reference to an association with the other person's speech implies that expressive association was at issue. Appellant did not assert an expressive association claim or allege that Appellees believed he shared Goldman's views. The other unpublished decision cited by Appellant, *Isakhanova v. Muniz*, is an association case that similarly relied on the reasoning of *Lewis. See* 2016 WL 1640649, at *4 (N.D. Cal. Apr. 26, 2016) (noting that the case "involves alleged retaliation against one 'associated party' for the speech of another, which falls squarely within the First Amendment protections outlined in cases such as *Lewis* and *Adler*").

The *Freeman* and *Isakhanova* courts' reliance on *Lewis* is misplaced. There, plaintiff was a Black teacher who asserted claims under both Title VII and the First Amendment, alleging that she suffered retaliation as the result of her father's speeches to the school board raising concerns with race discrimination. 922 F. Supp. 2d at 1295-97. Although the court primarily analyzed the case under the right of association, it found that "Lewis has also asserted a viable claim based solely on free speech." *Id.* at 1303. The court relied for this alternate proposition on case law developed under Title VII. It concluded that because the plaintiff could assert a retaliation claim under Title VII's statutory scheme, a First Amendment retaliation claim was also clearly established. *See id.* However, cases addressing Title VII have no bearing on whether a First Amendment right is clearly established. *See, e.g., Poe v. Haydon*, 853 F.2d 418, 428-29 (6th Cir. 1988) (holding that in a hostile environment claim brought under Section 1983, "the mere fact that Poe's Title VII rights to be free from 'hostile environment' sexual harassment were clearly established at the time of the challenged conduct is not sufficient to defeat appellants' qualified immunity"); *Naumovski v. Norris*, 934 F.3d 200, 218–19 (2d Cir. 2019) (holding that a prior decision "is only 'clearly established law' for statutory sexual orientation discrimination claims

23

under Title VII. It does not, however, 'clearly establish' constitutional (*i.e.* § 1983) sexual orientation discrimination claims.") (internal citations omitted). *Accord Gagne v. City of Galveston,* 805 F.2d 558, 560 (5th Cir. 1986) ("[A]llegations about the breach of a statute or regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right. This question must be answered solely by an inquiry into whether the constitutional right at issue was clearly established at the time of the events in question.").

Appellant contends that "the Ninth Circuit looks to Title VII cases in construing First Amendment retaliation claims, including when a right is 'clearly established' for qualified immunity purposes." [OB, p. 47 n. 4 (*citing Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003), and *Bator v. State of Hawai'i*, 39 F.3d 1021 (9th Cir. 1994)).] These cases do not support Appellant's argument. In *Coszalter*, this Court considered "analogous" Title VII cases in applying the "reasonably likely to deter" element of a retaliation claim. 320 F.3d at 976. It did not hold that a claim recognized under Title VII was also clearly established under the First Amendment. In *Bator*, the court noted that the right to be free of sexual harassment had long been clearly established under both Title VII and the Constitution. 39 F.3d at 1028. The court also held that because they address the "same wrong: discrimination," Title VII cases are instructive with respect to an analogous constitutional claim. *Id.* at 1028, n.7. Here, Appellant could not have asserted a claim under Title VII because Goldman's speech was not protected by Title VII. *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (holding that Title VII protects activity such as "the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to 'oppose[ ]'

an employer's discriminatory practices.") (citing 42 U.S.C. § 2000e–3(a)). Cases interpreting Title VII are inapplicable to Appellant's First Amendment claim.

For this reason, Appellant's repeated citation to *Thompson v. N. Am. Stainless, LP* [OB, pp. 44, 47], a Title VII case, should also be disregarded as inapposite. Appellant argues that *Thompson*'s reasoning with respect to a spousal retaliation claim brought under Title VII "'has clear applicability in this case,' which is enough to clearly establish its unlawfulness for First Amendment purposes." [OB, p. 47.] *Thompson* construed a specific Title VII provision prohibiting retaliation for speech that implicates Title VII concerns. 562 U.S. at 174 ("Title VII's antiretaliation provision prohibits any employer action that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (internal quotations omitted). A public employee cannot reasonably be expected to understand or predict that a remedy afforded by an inapplicable statute could clearly establish an unrelated constitutional claim. *See Lum*, 876 F.2d at 1389 ("[G]overnment officials are not required to predict the future course of constitutional law.").

Appellant also inaccurately contends that this Court addressed a "similar issue" in *Biggs* and held that "family members have the right to bring an independent First Amendment claim in their own name." [OB, pp. 42-43.] In *Biggs*, the primary plaintiff was an attorney with a private law firm that provided city attorney services to the City of Redlands. 189 F.3d at 992. After the law firm fired the attorney because of her family's political activities, she and her husband and daughter filed suit, alleging that the termination violated, *inter alia*, the family's First Amendment rights. *Id.* The district court dismissed the attorney's First Amendment claim on the basis of qualified immunity, but declined to dismiss the First Amendment claim asserted by the husband and daughter. *Id.* at 993. On appeal, the Ninth Circuit affirmed the

25

dismissal of the attorney's First Amendment claim, finding the speech unprotected because she held a policymaking position with the City. *Id.* at 997. It reversed as to the husband and daughter, who had alleged that "their First Amendment political speech was chilled by their desire to protect Julie Biggs' position at BBK, and the salary that went with it." *Id.* The court held that because their claims were entirely derivative of the attorney's claim, they also failed. *Id.* at 997-98. *Biggs* is not remotely applicable here.

Appellant then states: "Other cases abound," citing eight additional cases. [OB, p. 43 and n.3.][7] Of these cases, few even address alleged free speech rights, and they are all distinguishable. *Agostino v. Simpson* involved one claim that is analogous to the Appellant's First Amendment "retaliation" claim. Plaintiff asserted that he was disciplined in retaliation for the First Amendment-protected activity of his father, Santo. 2008 WL 4906140, at *5. The court noted that "[b]ecause Plaintiff has attempted to assert a cause of action based on Defendants' alleged violation of Santo's First Amendment rights, the Court must first determine whether Plaintiff has standing to assert these rights on a third-party basis. If so, the second question for the Court is whether Plaintiff has adequately alleged a violation of Santo's First Amendment rights." *Id.* The court held that plaintiff had met the three required elements of third-party standing: "(1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third

---

[7]     Five of those cases are unpublished district court cases, most from outside the Ninth Circuit: *Agostino v. Simpson*, 2008 WL 4906140 (S.D.N.Y. Nov. 17, 2008), *Fannon v. Patterson*, 2014 WL 4273337 (S.D. Ohio Aug. 29, 2014), *Talley v. Brentwood Union Free Sch. Dist.*, 2009 WL 1797627 (E.D.N.Y. June 24, 2009); *Roberts v. Ferry County*, 2008 WL 5121606 (E.D. Wash. Dec. 5, 2008), and *Gray v. Bruneau-Grand View Sch. Dist. No. 365*, 2007 WL 1381785, (D. Idaho Mar. 27, 2007).

party's rights, and (3) some hindrance to the third party's ability to protect his or her own interests." *Id.* at *5-6 (internal quotations omitted).  Similarly, the court in *Serena H. v. Kovarie* denied a motion to dismiss because "the allegations of the complaint, viewed in the light most favorable to plaintiff, suggest that she can satisfy the requirements of third-party standing." 209 F. Supp. 2d 453, 458 (E.D. Pa. 2002). *Agostino* and *Serena H.* are inapplicable because Appellant is not asserting a violation of Goldman's constitutional rights and has never attempted to satisfy the requirements of third-party standing.

In *Cain v. Tigard-Tualatin Sch. Dist. 23J*, 262 F. Supp. 2d 1120 (D. Or. 2003), the court addressed whether a student, Joshua, had a viable First Amendment retaliation claim based on abuse he sustained because of his parents' complaints against the school's football coach, Geske.  The court first addressed "whether the alleged retaliatory conduct denied Joshua a cognizable benefit." *Id.* at 1125.  The court cited the abuse and harassment Joshua had suffered, and stated:

> The first amended complaint alleges that these deprivations were specifically motivated by a retaliatory intent to prevent Joshua and his parents from further criticizing Geske and his alleged inappropriate behavior. Because these deprivations were allegedly made in retaliation for Joshua's protected activities, they are sufficiently severe to constitute the loss of a benefit for purposes of Joshua's First Amendment retaliation claim.

*Id.* at 1126.  The court further found Joshua's conduct to be protected under the First Amendment because the amended complaint alleged that the parents were speaking on behalf of Joshua, and that "Geske's conduct was motivated by Joshua's association with his parents' speech (speech which Joshua authorized and adopted)." *Id.* at 1127. *Cain* is inapplicable because Appellant was not a minor and did not authorize or adopt Goldman's speech.

The *Fannon v. Patterson* court relied on *Lewis* for the proposition that "the First Amendment may also be violated where the speech that invoked the government's retaliatory response was not made by the plaintiff herself [or himself], but rather by a person in a close relationship with the plaintiff, and the government retaliated against the plaintiff for her [or his] perceived association with the other person and that person's speech." 2014 WL 4273337, at *4 (*quoting Lewis*, 922 F.Supp.2d at 1302–03). The court further found that the First Amendment retaliation claim failed because plaintiff pled guilty of the offenses with which he was charged. *Id.* The court did not address qualified immunity or hold that the retaliation claim was clearly established.

Moreover, courts outside the Second and Sixth Circuits have rejected free speech retaliation claims where the plaintiff was not the speaker. In *Gaines*, for example, the Eleventh Circuit held that a reasonable official would not have known that retaliation against the daughter, who was not the speaker, could violate her free speech rights. 871 F.3d at 1212 ("It might be fair to say in that situation that the employer knew or should have known that he was violating the *father's* First Amendment rights. However, it was not clearly established under the controlling law that it 'would violate the constitutional rights *of the [employee].*'") (emphasis and alteration in original) (*quoting Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017)). Similarly, in *Smith v. Frye*, 488 F.3d 263, 267 (4th Cir. 2007), the Fourth Circuit affirmed dismissal of a speech-based retaliation claim brought by a mother who was allegedly terminated in retaliation for the political activities of her son because the mother "had not spoken or expressed herself in any way." These decisions are consistent with this Court's decision in *Wasson*. The *Wasson* court dismissed plaintiff's free speech retaliation claim because plaintiff denied engaging in the speech at issue, holding that "a plaintiff must demonstrate that she has engaged in constitutionally

28

protected expression to establish a First Amendment retaliation claim." 203 F.3d at 662.

Fair review of the caselaw reveals the complete absence of a robust consensus of authority supporting that Appellant had a clearly established First Amendment free speech right that could have been violated under the circumstances here. Qualified immunity bars this claim.

### c. No Robust Consensus of Persuasive Authority Supports An Intimate Association Claim Under These Circumstances.

Even if the SAC could be construed as alleging a First Amendment intimate association claim (despite Appellant removing that allegation from his pleading), the claim remains barred by qualified immunity. The intimate association cases Appellant cites are not sufficient to create clearly established law. In *Adler*, for example, the court held that the matter was not "free from doubt," and granted qualified immunity because "the right of a government policy-maker to be free from adverse employment action in retaliation for some extraneous occurrence, such as his wife's activities, was not clearly established at the time of Adler's discharge." 185 F.3d at 48.[8]

Appellant also relies on three association cases from the Sixth Circuit. [OB, p. 41 (*citing Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400 (6th Cir. 2011), *Adkins v. Bd. of Educ. of Magoffin Cty., Ky., supra*, and *Sowards v. Loudon County, supra*).] None support Appellant's claim. In *Gaspers*, the speaker was also a plaintiff, which by itself makes

---

[8]     Several of the association cases Appellant cites rely on *Adler*'s approach, including *Gray v. Bruneau-Grand View School Dist. No. 365*, 2007 WL 1381785, *1, *Roberts v. Ferry County*, 2008 WL 5121606, *4, *Talley v. Brentwood Union Free School Dist.*, 2009 WL 1797627, *5, *Everitt v. DeMarco*, 704 F.Supp.2d 122, 134-35 (D. Conn. 2010), *Agostino v. Simpson*, 2008 WL 4906140, *9, and *Isakhanova v. Muniz*, 2016 WL 1640649, *4.

the case inapplicable. 648 F.3d at 403. The court noted that "[t]he Supreme Court recognized the First Amendment right to freedom of association in intimate human relationships in *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)." *Id.* at 414. The *Gaspers* court's interpretation of *Roberts* is also contained in the *Adkins* and *Sowards* cases. *See Adkins*, 982 F.2d at 955-56; *Sowards*, 203 F.3d at 432. However, the *Roberts* court actually said:

> Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain **intimate human relationships** must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. **In this respect, freedom of association receives protection as a fundamental element of personal liberty.** In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.

468 U.S. at 617–18 (emphasis added). This Court has interpreted *Roberts* as recognizing that the freedom of intimate association is "protected under the Substantive Due Process Clause of the Fourteenth Amendment," not the First Amendment. *See, e.g., Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 458 (9th Cir. 2018) (*citing Roberts*).

Subsequent cases in the Second and Sixth Circuits cast doubt on whether *Adler* and *Adkins* properly cited the First Amendment as the source of the right of intimate association. For example, in *Hartwell v. Houghton Lake Cmty. Sch.*, 755 F. App'x 474, 477 (6th Cir. 2018), the Sixth Circuit found that the right of intimate association is protected by the Fourteenth Amendment, not the First Amendment. In *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 61 (2d Cir. 2014), the Second Circuit reiterated the "ambiguity of the right to intimate association" and held that the source of that right

30

has not been "authoritatively determined." The inconsistency between the Circuits and uncertainty as to the source of the right of intimate association compels a finding that a First Amendment right of intimate association is not clearly established.

### 4. The District Court Properly Found Appellant's Claim Was Not Based On Clearly Established Law.

Appellant next criticizes the District Court's decision by inconsistently arguing that he has demonstrated clearly established law supporting his claim or, alternatively, that he did not need to do so. Appellant argues that "[i]t is impossible to reconcile this bevy of law with the district court's conclusion that Appellees lacked fair warning that firing DeFrancesco would violate his First Amendment rights." [OB, p. 44.] As detailed above, there is no applicable binding, or even persuasive, "bevy of law."

Appellant then posits that it is "obvious" that the clearly established law prohibiting retaliation against the speaker extends to retaliation against the speaker's spouse. [OB, p. 45.] Appellant ignores, however, the legal standard for defeating qualified immunity where the violation is obvious. This Court has held that fair warning can be established "even without a body of relevant case law" in an "obvious case." *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (internal quotations omitted). However, "the bar for finding such obviousness is quite high." *Id.* (*citing Ashcroft*, 563 U.S. at 742). For example, in *Hope*, the Supreme Court found that tying a prisoner to a hitching post to discipline the inmate obviously violated the Eighth Amendment because it "unnecessar[ily] and wanton[ly] inflicted pain." 536 U.S. at 741 (alterations in original, quotation omitted). Similarly, the Supreme Court in *Taylor v. Riojas* reversed the Fifth Circuit's grant of qualified immunity where "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably

unsanitary conditions for such an extended period of time." 592 U.S. 7, 8–9 (2020). No such obvious violation occurred here.

Appellant also cites *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001), for the contention that a right can be clearly established on the basis of "common sense." [OB, p. 46.] In *Giebel*, this Court addressed whether a university professor's removal of handbills that plaintiff posted on campus to advertise his upcoming speech constituted the violation of plaintiff's First Amendment rights. 244 F.3d at 1185. It held that "[b]oth common sense and closely analogous case law lead us to conclude that it was clearly established long before 1996 that Giebel's handbills were a form of speech protected by the First Amendment." *Id.* at 1189. Appellant has not cited any remotely analogous caselaw.

Appellant's reliance on *Mendoza v. Block*, 27 F.3d 1357 (9th Cir. 1994), and *Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000), is materially misplaced. In *Mendoza,* this Court held that "no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control." 27 F.3d at 1362. In *Schwenk*, the plaintiff was subjected to sexual assault while imprisoned. This Court rejected as "absurd" the argument that qualified immunity applied because the assailant was a guard rather than another inmate, and further rejected the contention that a prohibition against same sex sexual harassment was not clearly established simply because no decision had specifically addressed a situation where both assailant and victim were the same gender. 204 F.3d at 1198.

In each of these cases, the law was settled as to the existence of the constitutional right asserted. That is not the situation here, where the right at issue is not even defined beyond the generalized "First Amendment retaliation" label

Appellant repeatedly employs. Where it is necessary to "wrestle with difficult and unsettled questions about the First Amendment interests implicated," the Ninth Circuit has declined to find that the officials could have possibly had fair warning. *See Porter v. Bowen*, 496 F.3d at 1026 (applying qualified immunity to alleged First Amendment violation relating to vote swapping). Appellant's inability to define a recognized First Amendment right creates difficult and unsettled questions about the First Amendment interests at issue similar those that supporting qualified immunity in *Porter*. An "obvious" violation does not exist, and "common sense" does not defeat qualified immunity.

The fact that "no earlier retaliation case 'expressly le[ft] open' whether spousal retaliation is also unconstitutional" [OB, p. 46 (*quoting Hope*, 536 U.S. at 741)] is not relevant to the analysis. First, "spousal retaliation" is not a constitutional violation unless a constitutional right belonging to the plaintiff spouse has been violated. Appellant has not identified such a right. Moreover, whether the question of spousal retaliation has been "left open" does not assist Appellant in carrying his burden of establishing that the right he contends was violated was clearly established at the time of the alleged misconduct. *See Romero*, 931 F.2d at 627. Appellant offers no authority for his argument that a prior decision must specifically leave the question at issue open for qualified immunity to apply.

Appellant further criticizes the District Court for not agreeing that the law he cited defeated Appellees' qualified immunity defense. First, he asserts (again) that "by 2019 numerous Circuit and district court cases had expressly held the First Amendment equally prohibits retaliation that is directed at a spouse or similarly close family member of an individual engaged in free speech." [OB, p. 47.] For all the reasons discussed above, this assertion is incorrect. He argues that "in this case there

is prior case law on all fours" without identifying the specific authority to which he is referring. [*Id.*, pp. 47-48.] He then contends that the differences between the cases he cited and his allegations are "not material," again not citing a single case. [*Id.*, p. 48.][9]

Appellant argues that the District Court should have relied on unpublished cases like *Nailon* and *Isakhanova*, despite the fact that these decisions have no precedential weight, because "[t]he constitutional standards are—and have long been—settled." [OB, p. 48.] Again, for the reasons discussed above, this assertion is false. Appellant has not stated the First Amendment right he contends was violated, let alone shown any uniformity as to the "constitutional standards" applicable to that right. It was entirely appropriate for the District Court to exercise the caution mandated by this Court in cases such as *Evans v. Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021) (noting that "because a decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case, … we have been somewhat hesitant to rely on district court decisions" for qualified immunity purposes) (internal citations and quotations omitted). The great majority of the cases Appellant cites are either district court decisions, unpublished dispositions, or both.

Quoting *Nailon*, Appellant contends that "it should have been clear to a reasonable University official that retaliating against [the plaintiff] for [a family member's] speech would be unlawful." [OB, pp. 48-49 (*quoting Nailon*, 715 F. App'x at 517).] The *Nailon* court held that the plaintiff had stated a First Amendment free speech retaliation claim despite the undisputed fact that the plaintiff was not the

---

[9]     Appellant contends that the District Court's decision "is silent on how [the case law] could have suggested to a reasonable officer in Appellees' shoes that their conduct towards DeFrancesco was permissible." [OB, p. 48.] This is another variation of Appellant's improper effort to shift his clear burden to Appellees.

speaker, relying on Title VII cases and on prior cases within the Sixth Circuit, none of which are binding here.  715 F. App'x at 516.  Moreover, the decision in *Nailon* is arguably unsupported by the precedent it cites.  *Nailon* relied on *Henley v. Tullahoma City Sch. Sys.*, 84 F. App'x 534 (6th Cir. 2003), and *Ward v. Athens City Bd. of Educ.*, 187 F.3d 639 (6th Cir. 1999), both unpublished dispositions, as relevant precedent for the free speech retaliation claim.  However, in both cases, minor children were the targets of retaliation for the speech of their parents, and the parents were also plaintiffs.  *See Henley*, 84 F. App'x 534 at 536; *Ward*, 187 F.3d 639 at *3.  Neither case required an inquiry into whether the child engaged in conduct protected by the First Amendment.  Indeed, in *Henley* "[t]he parties have assumed that Plaintiffs have satisfied the protected conduct element of Plaintiffs' burden." 84 F. App'x at 540.  These cases did not support the *Nailon* court's conclusion that in the Sixth Circuit, it was clearly established for qualified immunity purposes that a First Amendment retaliation claim could be brought by an adult based on the protected speech of a non-party family member.

Appellant next attempts to distinguish the cases cited by the District Court involving alleged violations of the Fourth and Fourteenth Amendments, arguing that they "stressed the need for closely analogous precedent" because of the "endless permutations of outcomes and responses" that occur in cases involving officers.  [OB, p. 50.]  He references "prior First Amendment law on spousal retaliation" without citing a single case, and asserts that "[i]t strains credulity that Appellees needed the Supreme Court or the Ninth Circuit to explicitly tell them this was wrong." [*Id.*, p. 50.]  Appellant's conclusory assertions are not a substitute for reasoned argument and legitimate authority.  He has not identified a recognized First Amendment right that

he seeks to protect, let alone identified sufficient case law to show that the right was clearly established and defeats qualified immunity. His claim was properly dismissed.

### 5. The District Court Properly Dismissed Appellant's Claim At The Pleadings Stage.

Appellant relies heavily on the "the need to exercise caution when a defendant raises a qualified immunity defense in a Rule 12(b)(6) motion." [OB, pp. 51-52 (*quoting Hydrick v. Hunter*, 500 F.3d 978, 986 n.5 (9th Cir. 2007)).] As explained above, cases noting this concern, including *Hydrick*, were decided at a time when courts were required to analyze whether a constitutional right existed <u>before</u> reaching the question of whether the right was clearly established. That approach is no longer required, and it is certainly not "rare" for this Court to affirm dismissals based on qualified immunity. Published decisions granting qualified immunity at the motion to dismiss stage abound: *Sabra*, 44 F.4th at 887 (alleged First Amendment right was not clearly established); *Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1199 (9th Cir. 2021) (no precedent supporting that police officer's actions "would violate clearly established First Amendment law"); *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021) ("two distinct due process theories" barred by qualified immunity); *Sampson*, 974 F.3d at 1016 (affirming dismissal of equal protection claim based on qualified immunity); *Schwake v. Arizona Bd. of Regents*, 821 F.App'x 768, 770 (9th Cir. 2020) (affirming dismissal of 42 U.S.C. § 1983 claims based on qualified immunity); *Kee v. Mersch*, 297 F.App'x 615, 617 (9th Cir. 2008) (same). This Court has also reversed denials of motions to dismiss based on qualified immunity in interlocutory appeals. *See, e.g.,*

*Nunes*, 983 F.3d at 1114; *Rico*, 980 F.3d at 1303.[10]  It was appropriate for the District Court to do so here.

### 6.    Appellant's Remaining Qualified Immunity Arguments Fail.

Appellant argues that "the [District Court] declared *ipse dixit* that the out-of-circuit decisions could not have conveyed fair notice to Appellees because they dealt with the First Amendment 'right of association,' not retaliation." [OB, p. 52.]  This argument is based on the false construct that a protection against "retaliation" is an independent right under the First Amendment.  It is not. As explained above, the plaintiff must identify the First Amendment right that was allegedly impinged upon (speech, intimate association, expressive association, etc.).  *See, e.g., Rizzo*, 778 F.2d at 531.  The District Court properly distinguished many of the cases Appellant cited, including *Adler* and *Adkins*, because they involved alleged violations of a First Amendment right of intimate association, not the First Amendment right of free speech, which was the <u>only</u> right alleged by Appellant in the SAC.

In the two decades since *Adler* was issued, courts have continued to reject its conclusion and find that the right Appellant asserts is not clearly established.  *See, e.g., Corkern v. Hammond City*, 2013 WL 4434417, at *4 (E.D. La. Aug. 14, 2013) (granting qualified immunity and declining to follow *Adler* because "no other circuit court has recognized it, including the Fifth Circuit"); *Vigil v. Tweed*, 2019 WL 2411740, at *12 (D.N.M. June 7, 2019) ("*Adler* is not sufficient to clearly establish a general right under the First Amendment to be free of retaliation based upon the conduct of a family

---

[10]    Appellant also argues that the District Court "did not construe DeFrancesco's allegations in the light most favorable to him, as required." [OB, p. 52.]  However, the District Court appropriately found that for purposes of deciding Appellees' Motion to Dismiss, Appellant had plausibly alleged that Goldman's speech was protected by the First Amendment.  [ER-15.]

member."); *Nittoli v. Morris Cnty. Bd. of Chosen Freeholders*, 2007 WL 1521490, at *7 (D.N.J. May 22, 2007) (declining to follow *Adler*, noting that it "conflate[s] the two types of protected association that have been recognized by the Supreme Court, extending the protection for association in regard to expression to intimate relationships in which the claimant did not actually engage in any form of protected expression").[11]  Further, as discussed above, later cases disagree with *Adkins'* conclusion that the First Amendment protects a right of intimate association. *See Hartwell v. Houghton Lake Cmty. Sch.,* 755 F. App'x at 477; *Presley v. Bd. of Sch. Directors of Rankin Sch. Dist. No. 98*, 2014 WL 1468087, at *2 n.1 (C.D. Ill. Apr. 15, 2014) (declining to follow *Adkins* based on Seventh Circuit precedent that "[t]he right to intimate association is analyzed as a liberty interest under the due process clause").

In his final qualified immunity argument, Appellant seems to concede his failure to define the specific constitutional right he contends was violated.  He illogically argues that "ambiguity" regarding the source of the constitutional right at issue does not support qualified immunity.  [OB, p. 54.]  However, each of the cases he cites for this proposition is an excessive force claim, the unconstitutionality of which has long been clearly established.  As the court in *Harris v. City of Circleville* noted, "[u]nder this circuit's existing case law, there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal

---

[11]    Recent decisions from courts in the Second Circuit (the *Adkins* court) analyze similar claims by determining whether the plaintiff can meet the elements of third party standing. *See, e.g., Stridiron v. Newburgh Enlarged City Sch. Dist.*, 2023 WL 5586680, at *10 (S.D.N.Y. Aug. 29, 2023) ("To the extent Matthew is claiming he suffered injury as retaliation for his father's speech, he lacks standing to do so."); *Dixon v. Lupis*, 2021 WL 4391246, at *8 (D. Conn. Sept. 24, 2021) ("Thus, the Court concludes that Dixon lacks standing to assert a First Amendment retaliation claim based on a third party's (his mother's) protected speech.").

suspect who already has been subdued and does not present a danger to himself or others." 583 F.3d 356, 367 (6th Cir. 2009). There is no similarly established law supporting Appellant's claim here. There is no binding authority, or robust body of persuasive case law, holding that retaliation against the plaintiff for the allegedly protected speech of his family member violates plaintiff's constitutional rights.

Appellant cites *Keates v. Koile*, *supra*, and *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), for the proposition that the right of intimate association (which Appellant did not allege) is protected under both the First and Fourteenth Amendments, arguing that "to the extent DeFrancesco may have 'associational' rights under the First Amendment in addition to his right to be free from speech-based retaliation, that doubles Appellees' liability, not eliminates it entirely." [OB, pp. 54-55.] Appellant cannot combine two non-existent (or, at best, unsettled) rights to create liability under the First Amendment where liability would not exist under either right individually. The cases Appellant cites do not support this argument. In *Keates,* Child Protective Services removed a child from the custody of her parents. 883 F.3d at 1232. And, in *Lee,* the police mistakenly arrested a mentally disabled man who was being cared for by his mother. 250 F.3d at 687-88. These cases involved allegations of direct governmental interference in a familial relationship, which Appellant has never alleged.

Lastly, Appellant cites this Court's prior directive: "If the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward with their claims.'" [ER-39-40 (*quoting Keates*, 883 F.3d at 1234).] Appellant has not done so, and his claim was properly dismissed.

### C. Even If Not Barred By Qualified Immunity, Appellant Did Not Plead A Plausible First Amendment Retaliation Claim.

Appellant affirmatively addresses additional arguments Appellees made below in support of dismissing his First Amendment Retaliation claim. [OB, p. 55.] As Appellant admits, to state a plausible retaliation claim, he must allege facts demonstrating that "the protected expression was a substantial motivating factor for the adverse action." [OB, p. 55 (citing *Ulrich v. City & Cnty of San Francisco*, 308 F.3d 968, 976 (9th Cir. 2002)).] Appellant must show that Appellees intentionally retaliated against him for constitutionally protected conduct. *See Thomas v. Carpenter*, 881 F.2d 828, 829–30 (9th Cir. 1989) (allegedly adverse action must by "motivated by an intent to retaliate for his exercise of constitutionally protected rights."). However, the SAC did not plausibly allege that either President Robbins or Dr. Dake intentionally retaliated against Appellant because of Goldman's speech.[12]

### 1. Dr. Dake Could Not Retaliate For Speech Of Which He Was Unaware.

It is beyond legitimate debate that for Dr. Dake to have retaliated against Appellant for Goldman's protected speech, Dr. Dake must have been aware of the protected speech. *See Cooper v. Cate*, 2011 WL 5554321, *7 (E.D. Cal. Nov. 15, 2011) (dismissing First Amendment retaliation claim, noting that "[i]f a defendant does not have knowledge of protected speech, then the protected speech cannot be a substantial or motivating factor in any adverse employment actions.").

---

[12] Appellant argues that the District Court "agreed" that Goldman's speech was protected by the First Amendment. [OB, p. 56.] The District Court actually noted that it made that determination "[f]or purposes of this Order." [ER-15.] While Appellees maintain that Goldman's speech was not protected for the reasons set forth in the District Court briefing, they do not challenge the District Court's finding in this appeal.

The SAC contained no such allegations. Dr. Dake did not attend the March 2, 2018 meeting – the only setting in which Goldman supposedly complained about the search process for the Senior Vice President position. Dr. Dake did not work for the University at that time. [ER-27, ¶¶ 40, 41 (alleging that an offer to Dr. Dake was discussed at the meeting).] Accordingly, Dr. Dake could only have "retaliated" against Appellant for Goldman's speech if someone told Dr. Dake about Goldman's statements. The SAC alleged only that "President Robbins told Dake that Goldman had been a vocal and firm advocate against Dake. President Robbins also told Dake that Goldman's husband, DeFrancesco, was an executive in UAHS and that Dake had the authority to fire him." [ER-28, ¶ 47.] Appellant did not allege that President Robbins, or anyone else, told Dr. Dake that Goldman accused President Robbins of "rigging" the search process, exerting "improper influence," or any of the other "truth to power" statements alleged in the SAC and that the District Court found to be protected for purposes of deciding the Motion to Dismiss. [ER-9-10, n.2.] It is not plausible that Dr. Dake terminated Appellant in retaliation for protected speech of which Dr. Dake was unaware. *See Jack Russell Terrier Network*, 407 F.3d at 1035 ("Although we assume the truth of the facts alleged in the complaint, we cannot assume any facts necessary to the Appellants' claim that they have not alleged.").

Appellant does not directly address this pleading failure, but contends that the mere timing of the allegedly retaliatory actions was sufficient to plausibly plead his claim. [OB, p. 59 (*citing Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012)).] The facts alleged in *Watison,* however, made clear that defendants were aware of the protected conduct. Other cases confirm a retaliatory motive is not plausible absent defendant's knowledge of the protected conduct. *See, e.g., Dowell v. Contra Costa Cnty.*, 928 F. Supp. 2d 1137, 1150 (N.D. Cal. 2013) (holding that to plead that protected

speech was the motive for alleged retaliation, "Plaintiff must first allege that Defendants were aware of her protected speech"); *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 24 (2d Cir. 2017) ("With respect to the 'causal connection' requirement, a plaintiff must plead facts from which it can reasonably be inferred that the defendant was aware of the purportedly protected speech."); *Boxill v. O'Grady*, 935 F.3d 510, 518-19 (6th Cir. 2019) (dismissing complaint where plaintiff "offered no plausible, non-conclusory facts to show that O'Grady was even aware of her complaints against him"). In *Hammond v. City of Wilkes Barre*, 628 F. App'x 806, 808 (3d Cir. 2015), as here, plaintiff asserted that the causation requirement was satisfied by the timing of the alleged retaliation, but the court held that even if the temporal proximity was sufficient, the claim still failed because plaintiff failed to allege defendant had the required knowledge. The claim against Dr. Dake fails for this independent reason.

### 2. The SAC Did Not Allege That President Robbins Retaliated Against Appellant.

The SAC alleged that Dr. Dake terminated Appellant and engaged in all of the supposed "harassment" that occurred prior to the termination. [ER-28-31, ¶¶ 48-64.] Appellant did not allege that President Robbins engaged in adverse employment action of any sort. Instead, Appellant alleged: "On information and belief, Robbins, either expressly or implicitly, directed Dake to retaliate against DeFrancesco or, at a minimum, acted with a callous disregard for DeFrancesco's rights and the probable harm that he would suffer." [ER-28, ¶ 47.] This fact-barren assertion was not entitled to a presumption of truth, because it speculated as to multiple possible scenarios rather than stating what Appellant reasonably believed to be true. *See Merritt v. Countrywide Fin. Corp.*, 583 F. App'x 662, 664–65 (9th Cir. 2014) ("The court need

not accept as true facts that the pleader does not even claim to be true."). The SAC's only allegation concerning President Robbins' intent was the conclusory assertion that President Robbins had "the intent that Dake harass DeFrancesco." This did not constitute an allegation that President Robbins was "motivated by an intent to retaliate for [Appellant's spouse's] exercise of constitutionally protected rights." *See Thomas*, 881 F.2d at 829–30. The allegations also lacked factual support and were insufficient to adequately plead President Robbins' supposed intent. *See Millman v. Inglish*, 461 F. App'x 627, 628 (9th Cir. 2011) (affirming dismissal of Section 1983 claim where "Appellants have alleged no facts that would support an inference that Appellees intended to harm Appellants …. Mere conclusions of intent are insufficient to render Appellants' constitutional claims plausible.").

Moreover, to state a claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). As this Court has explained:

> To be liable under section 1983, a defendant official "must be more than a 'mere bystander.' Under our cases, an official whose "individual actions" do "not themselves rise to the level of a constitutional violation" may be held liable under section 1983 only if the official is an "integral participant" in the unlawful act.

*Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (*quoting Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020)). *See also Hill v. Rhude*, 556 F. Supp. 3d 1144, 1151 (D. Nev. 2021) ("As with all § 1983 claims, personal participation in the retaliatory conduct, and not merely the existence of a supervisory relationship, is required to hold supervisors liable."). The SAC did not allege facts showing that President Robbins was an "integral participant" (or a participant at all) in Dr. Dake's decision to terminate Plaintiff. *See Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 781 (9th Cir. 1997)

43

(affirming dismissal of Section 1983 claim against defendants where plaintiff "did not allege any personal participation by them in violating his constitutional rights").

Appellant contends that President Robbins can be liable for "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." [OB, p. 60 (*quoting Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).] However, the *Johnson* court found that the defendant failed to act "in violation of the duties imposed upon him by statute and by regulations." 588 F.2d at 744. No such duty is alleged here. Appellant also asserts a theory of supervisory liability against President Robbins, arguing that he could be liable for "his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.'" [OB, pp. 60-61 (*quoting Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)).] Appellant did not plead facts supporting any of these paths to supervisory liability.[13] The SAC did not assert that President Robbins told Dr. Dake about Goldman's allegedly protected speech, let alone instructed Dr. Dake to retaliate against Appellant for that speech. Accordingly, even crediting Appellant's contention that Goldman complained to President Robbins about Dr. Dake's supposed harassment of Appellant, President Robbins could not have believed that such harassment, or Dr. Dake's decision to terminate Appellant, could constitute

---

[13]     *Starr* is an Eighth Amendment case based on a theory of deliberate indifference. 652 F.3d at 1206. Appellant cited no authority demonstrating that this Court allows the application of a deliberate indifference theory to a First Amendment retaliation case.

"constitutional deprivations."[14]  The claim against President Robbins was fatally deficient.

## VII.  CONCLUSION.

Appellant is not entitled to the requested relief.  He has had multiple opportunities to plead a plausible, clearly established First Amendment retaliation claim, and he has been unable to do so.  The expenditure of scarce public funds to defend against these failed efforts must cease.  The District Court properly dismissed the SAC with prejudice.  Its decision should be affirmed.  Appellees respectfully request an award of their fees and costs on appeal pursuant to Fed. R. App. P. 39 and 42 U.S.C. § 1988.

DATED:  February 7, 2024.

Cohen Dowd Quigley P.C.
2425 East Camelback Road
Suite 1100
Phoenix, Arizona  85016

By: /s/ Rebecca van Doren
    Daniel G. Dowd
    Rebecca van Doren
    Cole K. Kubosumi
       Attorneys for Appellees Robert C.
       Robbins, and Michael D. Dake

---

[14] Appellant alleges that "[t]his Court already concluded that the 'facts DeFrancesco plead[ed] support an inference that he was terminated because he is married to a person who spoke out against the [Appellees'] actions.'" [OB, p. 59 (*citing* ER-38).] However, this Court made that statement in discussing the reasons that Plaintiff's equal protection and Title VII discrimination claim failed. [ER-38.]  It was not a "finding" relating to the First Amendment retaliation claim.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of the Ninth Circuit Local Rules 32-1(a) and 32-2(b) and contains 13,956 words, exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) as counted by the 2010 Microsoft Word word-processing program used to generate this brief.

I certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using 2010 Microsoft Word word-processing program with a 14-point Garamond font.

DATED: February 7, 2024.

Cohen Dowd Quigley P.C.
2425 East Camelback Road
Suite 1100
Phoenix, Arizona  85016

By: */s/ Rebecca van Doren*
Daniel G. Dowd
Rebecca van Doren
Attorneys for Appellees Robert C. Robbins and Michael D. Dake

46

## STATEMENT OF RELATED CASES

There are no related cases pending in this Court.

DATED:  February 7, 2024.

Cohen Dowd Quigley P.C.
2425 East Camelback Road
Suite 1100
Phoenix, Arizona  85016

By: */s/ Rebecca van Doren*
    Daniel G. Dowd
    Rebecca van Doren
    Cole K. Kubosumi
      Attorneys for Appellees Robert C.
      Robbins and Michael D. Dake