**23-16147**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

### ANTHONY T. DEFRANCESCO

*Plaintiff and Appellant,*

*v.*

### ROBERT C. ROBBINS AND MICHAEL D. DAKE

*Defendants and Respondents.*

---

Appeal from United States District Court
Central District of California
Hon. Cindy K. Jorgenson
U.S. District Court Case No. 4:20-cv-00011-CKJ

---

### APPELLANT'S REPLY BRIEF

---

### MILLER BARONDESS, LLP
Louis R. Miller
smiller@millerbarondess.com
David W. Schecter
dschecter@millerbarondess.com
*Lauren M. Brody
lbrody@millerbarondess.com
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Tel.: (310) 552-4400
Fax: (310) 552-8400

Attorneys for
*Plaintiff and Appellant ANTHONY T. DEFRANCESCO*

665719.8

## <u>TABLE OF CONTENTS</u>

**<u>PAGE</u>**

I.    INTRODUCTION ................................................................................1

II.   ARGUMENT .....................................................................................2

    A.    Appellees Fail To Rebut The Error In Deciding Qualified
          Immunity On The Pleadings ......................................................2

    B.    Appellees Are Wrong That DeFrancesco's First
          Amendment Right Was Not Clearly Established ......................9

    C.    DeFrancesco Plausibly Alleged Retaliation By Appellees.......30

III.  CONCLUSION ..................................................................................31

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Adkins v. Bd. of Educ. of Magoffin Cnty., Ky.*,
    982 F.2d 952 (6th Cir. 1993) ................................................................ 12, 27

*Adler v. Pataki*,
    185 F.3d 35 (2d Cir. 1999) ....................................... 12, 23, 27, 29

*Agostino v. Simpson*,
    2008 WL 4906140 (S.D.N.Y. Nov. 17, 2008) ...........................................12

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011)......................................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................15

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*,
    481 U.S. 537, 545 (1987) ...........................................................................26

*Benigni v. City of Hemet*,
    879 F.2d 473 (9th Cir. 1988) .......................................................................5

*Biggs v. Best, Best & Krieger*,
    189 F.3d 989 (9th Cir. 1999) ............................................................. 18, 21

*Colonies Partners LP v. County of San Bernadino*,
    2018 WL 6074577 (C.D. Cal. July 12, 2018) ...........................................22

*Corkern v. Hammond City*,
    2013 WL 4434417 (E.D. La. Aug. 14, 2013).............................................23

*Coszalter v. City of Salem*,
    320 F.3d 968 (9th Cir. 2003) ......................................................................25

*Crawford-El v. Britton*,
    523 U.S. 574 (1998)......................................................................................10

*DeFrancesco v. Arizona Bd. of Regents*,
    2023 WL 313209 (9th Cir. Jan. 19, 2023).....................................................3

*Dunn v. Castro*,
    621 F.3d 1196 (9th Cir. 2010) ............................................................ 3, 5, 7

*Elder v. Holloway*,
    510 U.S. 510 (1994).................................................................................6, 24

*Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*,
   880 F.3d 450 (9th Cir. 2018) ........................................................26

*Fannon v. Patterson*,
   2014 WL 4273337 (S.D. Ohio Aug. 29, 2014) ............................12

*Freeman v. County of Riverside*,
   2019 WL 7905733 (C.D. Cal. Apr. 5, 2019) ................................ 12, 17, 18

*Gaines v. Wardynski*c,
   871 F.3d 1203 (11th Cir. 2017) ...................................................22

*Gaspers v. Ohio Dep't of Youth Servs.*,
   648 F.3d 400 (6th Cir. 2011) .......................................................27

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246 (9th Cir. 1997) .........................................................3

*Gomez v. Toledo*,
   446 U.S. 635 (1980) ......................................................................5

*Groten v. California*,
   251 F.3d 844 (9th Cir. 2001) .........................................................4

*Hartman v. Moore*,
   547 U.S. 250 (2006) ..................................................... 10, 14, 16

*Hartwell v. Houghton Lake Cmty. Sch.*,
   755 F. App'x 474 (6th Cir. 2018) ................................... 27, 28, 29

*Hope v. Pelzer*,
   536 U.S. 730, 739 (2002) ............................................................19

*Horstkoetter v. Dep't of Pub. Safety*,
   159 F.3d 1265 (10th Cir. 1998) ...................................................18

*Keates v. Koile*,
   883 F.3d 1228 (9th Cir. 2018) ...................................................3, 26

*Kee v. Mersch*,
   297 F. App'x 615 (9th Cir. 2008) .................................................9

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .......................................................26

*Lewis v. Eufaula City Bd. of Educ.*,
   922 F. Supp. 2d 1291 (M.D. Ala. 2012)................................. 12, 24

*Lum v. Jensen*,
   876 F.2d 1385 (9th Cir. 1989) ............................................. 19, 20

*Malloy v. Hogan*,
   378 U.S. 1 (1964)........................................................................13

*Mann v. Sacramento Police Dep't*,
803 F. App'x 142 (9th Cir. 2020) ................................................26

*Matusick v. Erie Cnty. Water Auth.*,
757 F.3d 31 (2d Cir. 2014) ................................................ 27, 28

*Moonin v. Tice*,
868 F.3d 853 (9th Cir. 2017) ................................................22

*Morales v. Fry*,
873 F.3d 817 (9th Cir. 2017) .................................................5

*Moreno v. Baca*,
431 F.3d 633 (9th Cir. 2005) .................................................5

*Morley v. Walker*,
175 F.3d 756 (9th Cir. 1999) .................................................3

*Mullenix v. Luna*,
577 U.S. 7 (2015) ................................................27

*Nailon v. Univ. of Cincinnati*,
715 F. App'x 509 (6th Cir. 2017) ................................................ 11, 24

*Nieves v. Bartlett*,
139 S. Ct. 1715 (2019) ................................................ 10, 14, 16

*Nittoli v. Morris Cnty. Bd. of Chosen Freeholders*,
2007 WL 1521490 (D.N.J. May 22, 2007) ................................................24

*Norwood v. Vance*,
591 F.3d 1062 (9th Cir. 2010) .................................................2

*O'Brien v. Welty*,
818 F.3d 920 (9th Cir. 2016) .................................................3

*Owens v. Rush*,
654 F.2d 1370 (10th Cir. 1981) ................................................ 14, 15

*P.B. v. Koch*,
96 F.3d 1298 (9th Cir. 1996) ................................................27

*Pearson v. Callahan*,
555 U.S. 223 (2009) .................................................4

*Pelletier v. Fed. Home Loan Bank of S.F.*,
968 F.2d 865 (9th Cir. 1992) .................................................3

*Perry v. Sindermann*,
408 U.S. 593 (1972) ................................................ 10, 13, 15, 20

*Polanco v. Diaz*,
76 F.4th 918 (9th Cir. 2023) ................................................16

*Porter v. Bowen*,
   496 F.3d 1009 (9th Cir. 2007) ....................................................19

*Presley v. Bd. of Sch. Dirs.*,
   2014 WL 1468087 (C.D. Cal. Apr. 15, 2014) ...............................29

*Rizzo v. Dawson*,
   778 F.2d 527 (9th Cir. 1985) ....................................................14

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984)..................................................................26

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*,
   44 F.4th 867 (9th Cir. 2022) ..................................................4, 7

*Sampson v. County of Los Angeles*,
   974 F.3d 1012 (9th Cir. 2020) ......................................... passim

*Saved Mag. v. Spokane Police Dep't*,
   19 F.4th 1193 (9th Cir. 2021) ....................................................8

*Schwake v. Ariz. Bd. of Regents*,
   821 F. App'x 768 (9th Cir. 2020) ..............................................9

*Serena H. v. Kovarie*,
   209 F. Supp. 2d 453 (E.D. Pa. 2002) .........................................12

*Sharp v. County of Orange*,
   871 F.3d 901 (9th Cir. 2017) ....................................................19

*Shooter v. Arizona*,
   4 F.4th 955 (9th Cir. 2021) ........................................................8

*Smith v. Frye*,
   488 F.3d 263 (4th Cir. 2007) ....................................................23

*Soo Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) ....................................................31

*Speiser v. Randall*,
   357 U.S. 513 (1958)..................................................................14

*Steinle v. City & Cnty. of San Francisco*,
   919 F.3d 1154 (9th Cir. 2019) ..................................................15

*Thompson v. N. Am. Stainless, LP*,
   562 U.S. 170 (2011)............................................................12, 21

*Vance v. Barrett*,
   345 F.3d 1083 (9th Cir. 2003) ..................................................15

*Vigil v. Tweed*,
   2019 WL 2411740 (D.N.M. June 7, 2019).................................23

*Walker v. Jemez Mountain Sch. Dist.*,
　　2020 WL 3402058 (D.N.M. June 19, 2020)..........................................21, 23

*Wasson v. Sonoma Cnty. Junior Coll.*,
　　203 F.3d 659 (9th Cir. 2000) ...............................................................20, 21

*Wood v. Ostrander*,
　　879 F.2d 583 (9th Cir. 1989) ........................................................................27

## **FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6)................................................................................ 2, 3, 5

Fed. R. Civ. P. 8(d)(1)......................................................................................16

Fed. R. Civ. P. 8(e)...........................................................................................16

## I.    INTRODUCTION

The Opening Brief ("AOB") explained why the district court erred: even without a Ninth Circuit case on all fours, existing law on First Amendment retaliation was sufficiently clear by 2019 that no reasonable University official could have thought it permissible to harass and fire DeFrancesco for his husband's protected speech.  Rather than address Appellant's arguments, the Answering Brief ("RB") tries to win on technicalities:

For example, Appellees contend that DeFrancesco's "Statement of the Case" "misstates both the allegations in the SAC and the procedural history of this dispute."  (RB2.)  DeFrancesco misstated nothing.  Appellees' leading example? That the Opening Brief states that Robbins "rigged the hiring process" (AOB6), when "[t]he term 'rigged' never appeared in the SAC" (RB3).  There is an *entire section* titled "President Robbins *Rigs* the Search for Senior Vice President." (ER24 (emphasis added).)  "Rigged" is also a fair synopsis of DeFrancesco's allegations that Robbins manipulated the recruitment process to give the lucrative SVP position to Dake.[1]

Appellees also claim DeFrancesco "never identified the specific First Amendment right at issue."  (RB13.)  This is silly.  DeFrancesco is not asserting an

---

[1] Appellees made the same argument in their last Answering Brief and that panel correctly paid it no heed.  (Appellant's Further Excerpts of Record ("FER") 14.)

"abstract First Amendment right to be free from retaliation." (*See* RB5.) The "right" at issue, stated in the *first sentence* of the Opening Brief, is DeFrancesco's right to be free from government "retaliation for his husband's First Amendment-protected whistleblowing activities." (AOB1.)

As a fallback, Appellees use a *different* right under the Fourteenth Amendment to manufacture ambiguity in DeFrancesco's First Amendment right. (RB30-31.) As the Opening Brief explained, "[t]he relevant, dispositive inquiry ...is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted"—not whether it was clear to him which clause of the Constitution he violated. *Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010) (italics omitted); (*see* AOB45-46 (accumulating cases)). To the extent the SAC supported competing inferences about the source of DeFrancesco's right, the court was supposed to resolve them in his favor.

This Court should reverse.

## II. ARGUMENT

### A. Appellees Fail To Rebut The Error In Deciding Qualified Immunity On The Pleadings

The Answering Brief devotes significant space defending the decision to resolve qualified immunity on a 12(b)(6) motion, but Appellees' arguments run headlong into the reasons why it was error.

### 1. Qualified Immunity Does Not Displace Courts' Obligation To Favorably Construe Allegations

Appellees argue that because "the 'clearly established' prong of the qualified immunity analysis is 'solely a question of law for the judge,'" this means "the Court's obligation" under Rule 12(b)(6) "to view the claim in the light most favorable to [DeFrancesco] is inapposite to the qualified immunity analysis." (RB6-7 (quoting *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010)).) Wrong.

Whether a complaint states a plausible claim is *always* a question of law. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997). Qualified immunity does not modify the requirement that, to resolve that question, courts accept the allegations as true and view the complaint in the light most favorable to the plaintiff. *E.g.*, *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

It is *because* judges must apply the 12(b)(6) standard that this Court has warned that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *DeFrancesco v. Ariz. Bd. of Regents*, 2023 WL 313209, at *2 (9th Cir. Jan. 19, 2023) (quoting *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018)) (available at ER34-40); *accord O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016); *Morley*, 175 F.3d at 761; *Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 872 (9th Cir. 1992);

*Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

Appellees try to skate this precedent by suggesting it was *sub silencio* overruled by *Pearson v. Callahan*, 555 U.S. 223 (2009), which held courts may address the qualified immunity prongs in either order.[2] (RB8-9, 36.) Appellees cite no law supporting this interpretation. Appellees' own caselaw affirmed post-*Pearson* that "resolving claims of qualified immunity at the motion-to-dismiss stage can sometimes present 'special problems for legal decision making,'" and it may be preferable to "delay a decision on qualified immunity until the parties have had the opportunity to develop a more comprehensive factual record." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 892 (9th Cir. 2022) (cited RB12, 36).

Appellees' position is likewise inconsistent with this Court's prior ruling in *this case*. The Court reminded the district court of the "special problems" and remanded with the admonition that "[i]f the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then [DeFrancesco is] entitled to go forward with [his] claim." (ER39-40 (citation and internal quotation marks omitted).)

---

[2] Those prongs are (1) whether the facts "make out a violation of a constitutional right", and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232.

Appellees' reliance on the "importance of resolving immunity questions at the earliest possible stage in litigation" is misplaced. (RB7 (quoting *Dunn*, 621 F.3d at 1199).) That policy is why "qualified immunity was conceived as a *summary judgment* vehicle." *Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017) (emphasis added). The pleadings are always the earliest stage, yet dismissals on immunity grounds remain rare.

## 2. Appellees Misstate The Standard For Qualified Immunity

Appellees' misstatement of the governing standard dovetails with another problem: they misstate the burden of proof. Appellees repeatedly object to references regarding what a "reasonable officer...could have believed" was lawful, characterizing this language—which came from this Court—as "inappropriate[]" burden shifting. (RB10 (quoting AOB12); RB11 (quoting AOB48).) The opposite is true.

Qualified immunity is an affirmative defense, and "the burden of proving th[at] defense lies with the official asserting it." *Benigni v. City of Hemet*, 879 F.2d 473, 479 (9th Cir. 1988) (citation omitted); *see Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful."); *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005) ("[D]efendant bears the burden of proof on the issue of qualified immunity."). As the parties who moved to dismiss, Appellees also bore

the usual movant's burden of demonstrating that DeFrancesco failed to state a claim.

*Elder v. Holloway* (cited RB 11) does not help Appellees. The plaintiff in *Elder* became paralyzed during a warrantless arrest. 510 U.S. 510, 512 (1994). At issue was whether it was clearly established that the officers needed a warrant. *Id.* at 513. Although there was "precedent [o]n point," the plaintiff had not cited it. *Id.* The court of appeal refused to consider the precedent on the grounds that it was "the plaintiff's burden in responding to a request for judgment based on qualified immunity...to identify the universe of statutory or decisional law from which the [district] court can determine whether the right allegedly violated was clearly established." *Id.* at 513-14.

Appellees put weight on the *Elder* Court's statement that a "central purpose" of qualified immunity is "protect[ing] [officials] 'from undue interference with their duties and from potentially disabling threats of liability.'" 510 U.S. at 514. (citation omitted). However, the "interests on the other side of the balance" carried the day in *Elder*: "deterring public officials' unlawful actions and compensating victims of such conduct." *Id.* at 515. The Court rejected the court of appeal's test and reversed qualified immunity. *Id.* at 516. *Elder* thus refutes Appellees' suggestion that DeFrancesco bore any burden. (*See* RB11.)

### 3. Appellees' Caselaw Does Not Show This Case Was Appropriate For Resolution On The Pleadings

This case is a far cry from *Dunn* (cited RB 6-7). "The pertinent inquiry" there was "whether a reasonable officer could have believed that" an incarcerated prisoner who engaged in improper conduct with a minor "could be temporarily deprived of his visitation privileges with his own children." 621 F.3d at 1205. The Court noted that "Supreme Court and Ninth Circuit precedent clearly established that prisoners *do not enjoy* an absolute right to receive visits while incarcerated, even from family members." *Id.* at 1201 (emphasis added). *Dunn* bears no resemblance to this one.

Appellees' other cases are similarly distinguishable.[3] In *Sabra*, a Muslim student challenged an e-course containing false statements regarding Islam. 44 F.4th at 874. The Court identified "two unique features that obviate[d] the concern over resolving qualified immunity claims prior to discovery": the complaint (1) "attached substantial documentary evidence," and (2) challenged "a self-guided course," so the court had "the universe of evidence [it] might wish to consider in resolving [the defendant's] claim of qualified immunity." *Id.* at 893. Neither

---

[3] Appellees repeat the same argument that motions to dismiss are appropriate for resolving qualified immunity in Parts A and B.5. While Appellees insist that "[p]ublished decisions granting qualified immunity at the motion to dismiss stage abound," several of their cases are, in fact, unpublished. (*See* RB36.)

7

"feature" exists here.

In *Saved Magazine v. Spokane Police Department*, the Court granted qualified immunity to a police officer who had separated protesters and counter-protesters into different "zones," and stopped a journalist from making political statements in the wrong "zone." 19 F.4th 1193, 1199-1200 (9th Cir. 2021). Unlike this case, there was "instructive" caselaw holding that officers may enforcing protest policies, and the plaintiff cited no "precedent to the contrary." *Id.* Here, Defendants cite nothing suggesting the lawfulness of speech-based retaliation.

The "rights" at issue in Appellees' remaining cases were less defined than the right to be free from speech-based retaliation.[4] *Shooter v. Arizona* involved whether a legislator had a clearly-established "liberty interest" under the Fourteenth Amendment when he was expelled from the state assembly, a theory that "present[ed] distinct federalism concerns." 4 F.4th 955, 961, 962 (9th Cir. 2021). The Court granted qualified immunity because there was only "one circuit decision that has squarely addressed the merits of a federal procedural due process challenge to a legislative expulsion, and that decision rejected the claim." *Id.* at 963.

---

[4] The only First Amendment retaliation case cited by Appellees, *Sampson v. County of Los Angeles*, 974 F.3d 1012 (9th Cir. 2020) (RB36), supports the conclusion that DeFrancesco's right was clearly established before his termination in 2019, and is discussed below. (*See infra*, p. 9-11.)

8

Similarly, in *Schwake v. Arizona Board of Regents*, there was no prior law on the plaintiff's claimed Fourteenth-Amendment right to "informational privacy." 821 F. App'x 768, 771 (9th Cir. 2020). And *Kee v. Mersch* involved a Contacts Clause claim after the plaintiff refused to obtain a motor-vehicle certificate required by a specific Nevada law. 297 F. App'x 615, 618 (9th Cir. 2008).

These inapposite cases do not prove this district court should have granted qualified immunity on a motion to dismiss.

**B.    Appellees Are Wrong That DeFrancesco's First Amendment Right Was Not Clearly Established**

**1.    Appellees' Own Authority Confirms Speech-Based Retaliation Is Clearly Unconstitutional Regardless Of The Victim**

The Answering Brief relies on *Sampson v. County of Los Angeles*, 974 F.3d 1012 (9th Cir. 2020). (RB36.) But, there, this Court *reversed* the dismissal of a First Amendment retaliation claim on qualified immunity grounds.

 The plaintiff in *Sampson* had volunteered to take custody of her niece. 974 F.3d at 1015. She alleged that County officials sabotaged her efforts to become the child's legal guardian after she reported sexual harassment by the social worker assigned to the case. *Id.* at 1016-17.

The Court held that "[i]t was clearly established at the time of Defendants'

conduct [in 2015] that the First Amendment prohibits public officials from" government action "to chill protected speech out of retaliatory animus for such speech." 974 F.3d at 1020. In support of the plaintiff's "longstanding, clearly established right under the First Amendment to be free from retaliation," the Court cited the exact "first principles" caselaw as the Opening Brief. *See id.* (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006) and citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998), *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)), and *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (all cited AOB29-30).

The facts of those cases could not be more different from *Sampson*. *Perry* involved a First Amendment challenge to a college's decision not to rehire the plaintiff, allegedly because of his public criticism of the administration. 408 U.S. at 595. *Nieves* and *Hartman* were about retaliatory prosecutions: in one, the plaintiff was arrested during a "weeklong winter sports festival...known for both extreme sports and extreme alcohol consumption" when he told fellow partygoers not to speak to police, *Nieves*, 139 S. Ct. at 1720; in the other, the plaintiff had lobbied against a U.S. Postal Service campaign to promote the use of nine-digit zip codes because he had a financial interest in mail-reading machines that relied on five-digit zip codes, *Hartman*, 547 U.S. at 253-54.

Yet, the Ninth Circuit concluded that "*Perry, Nieves, Hartman*" and their progeny "clearly establish[ed]" the plaintiff's right to be free from retaliation in her

guardianship case. 974 F.3d at 1021. Even if defendants "were [not] on notice that they could not retaliate against" this particular kind of victim—a non-parent seeking custody—the Court reasoned that the general prohibition on speech-based retaliation was sufficiently clear. *Id.* at 1020-21.

The Court also rejected the defendants' attempt to sow confusion because of ambiguities in Fourteenth Amendment caselaw. 974 F.3d at 1021. It explained, "even if we held that [the plaintiff] has no due process right under the Fourteenth Amendment" that was violated by the defendants' conduct, "she is still entitled to be free from retaliation under the First Amendment." *Id.* at 1021-22. For this reason, defendants' Fourteenth Amendment caselaw "cannot" have suggested "it was permissible for [d]efendants to think that it was constitutional to retaliate against a legal guardian but not against a biological parent." *Id.* at 1022. *Sampson* undermines Appellees' argument.

### 2. DeFrancesco Plausibly Alleged Unconstitutional Retaliation That Was Clearly Established

Pages 12-39 of the Answering Brief accumulate more than a dozen cases holding, in Appellees' own words:

- It is "clearly established that the termination of a public university employee based on complaints...made by her niece...constituted a violation of the First Amendment." (RB21 (citing *Nailon v. Univ. of Cincinnati*, 715 F. App'x 509 (6th Cir. 2017)).)

- "[T]he First Amendment 'may also be violated where the speech that invoked the government's retaliatory response was not made by the

plaintiff [], but rather by a person in a close relationship with the plaintiff, and the government retaliated against the plaintiff for [his] perceived association with the other person and that person's speech." (RB15 (citing *Freeman v. County of Riverside*, 2019 WL 7905733 (C.D. Cal. Apr. 5, 2019)); *see also* RB22 (citing *Lewis v. Eufaula City Bd. of Educ.*, 922 F. Supp. 2d 1291 (M.D. Ala. 2012)); RB28 (citing *Fannon v. Patterson*, 2014 WL 4273337 (S.D. Ohio Aug. 29, 2014)).)

- A plaintiff "ha[s] a liberty interest in not being denied employment for exercising her First Amendment right to freedom of association." (RB14 (citing *Adkins v. Bd. of Educ. of Magoffin Cnty., Ky.*, 982 F.2d 952 (6th Cir. 1993)).)

- "[A] spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association." (RB14 (citing *Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999)).)

In what Appellees characterize as an "analogous" case involving "retaliation for the First Amendment-protected activity of [the plaintiff's] father," the court denied the motion to dismiss. (RB26 (citing *Agostino v. Simpson*, 2008 WL 4906140, at *5 (S.D.N.Y. Nov. 17, 2008).) Appellees admit that courts have not dismissed retaliation claims brought by family members for lack of standing. (RB26-27 (citing *Agostino* and *Serena H. v. Kovarie*, 209 F. Supp. 2d 453, 458 (E.D. Pa. 2002)).) They concede that the U.S. Supreme Court found similar retaliation violates Title VII. (RB25 (discussing *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011)).)

The Opening Brief explained that these cases would have put a reasonable official in Appellees' shoes on notice that the First Amendment prohibited them

from retaliating against DeFrancesco for his husband's protected speech.  (AOB29-35.)  None of Appellees' contrary arguments hold water.

### a. DeFrancesco Sufficiently Pled A Constitutional Right

Appellees' claim that DeFrancesco did not "identify the constitutional right that he contends was violated" strains logic.  (RB12.)  Appellees correctly observe that DeFrancesco is alleging "retaliation" in the form of "harass[ment]" and "ultimately terminat[ion]...because his husband exercised his First Amendment-protected right of free speech."  (RB12 (citing ER21, ¶2, ER31-32, ¶70).)

Appellees argue that DeFrancesco has not alleged a constitutional violation because "[t]he First Amendment does not provide a general protection against 'retaliation.'"  (RB13.)  This fights a straw man.  DeFrancesco's claim is that he had a right to be free from retaliation *because of* his husband's protected speech.

As Appellees acknowledge, it has long been settled that "[t]he First Amendment affords and protects multiple constitutional rights, including freedom of speech" and "association."  (RB13 (citing *Malloy v. Hogan*, 378 U.S. 1, 5 (1964)).)  In 1972, the Supreme Court observed that "[f]or at least a quarter-century" it has been "clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely."  *Perry*, 408 U.S. at 597 (quoting *Speiser v. Randall*, 357 U.S. 513,

526 (1958)).

The Court explained that, "if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited." 408 U.S. at 597. It declared, "[s]uch interference with constitutional rights is impermissible." *Id.* Thus, when "an official takes adverse action against someone based on th[e] forbidden motive" of "'subjecting an individual to retaliatory actions' for engaging in protected speech...the injured person may generally seek relief by bringing a First Amendment claim." *Nieves*, 139 S. Ct. at 1722 (quoting *Hartman*, 547 U.S. at 256).

Appellees' cases confirm the clearly established nature of retaliation claims tied to the exercise of First Amendment rights. In *Rizzo v. Dawson* (cited AOB13), the Court reversed the dismissal of an inmate's claim that prison officials transferred him in retaliation for assisting other inmates in bringing § 1983 and habeas cases. 778 F.2d 527, 531 (9th Cir. 1985). This Court affirmed the defendants' conduct was actionable under the First Amendment. *Id*.

*Rizzo* adopted the reasoning from *Owens v. Rush*, 654 F.2d 1370 (10th Cir. 1981), which offers even greater support to DeFrancesco. There, the Tenth Circuit held that a government employee had pleaded a First Amendment claim after he was fired for assisting his wife prepare a Title VII case against their mutual

employer. The Tenth Circuit affirmed that the "First Amendment clearly affords protection against actions penalizing or inhibiting the exercise of such constitutional rights, even absent a contractual or tenure right to continued public employment." *Owens*, 654 F.2d at 1379 (citing *Perry*, 408 U.S. at 596-98).

*Vance v. Barrett* (cited RB13) does not help Appellees either. In *Vance*, a summary judgment case, the Court denied qualified immunity on claims that officials terminated inmates from their jobs for insisting on due process related to prison bank accounts. 345 F.3d 1083, 1086-87, 1094 (9th Cir. 2003). Even without "precedent specifically on point," the court deemed existing law "clear enough" to confer "fair notice that [defendants] could not retaliate against inmates for exercising their constitutional rights." *Id.* at 1094.

Appellees are trying to advance a phony waiver theory by arguing that DeFrancesco's claim (styled in the SAC as "First Amendment Retaliation") should be construed as alleging a violation of his First Amendment right of *intimate association*, and he "abandoned" that claim. (*See* RB13-15, 20-21.)

Appellees' argument is a red herring. It is the Court's obligation to "take all allegations of material fact as true and construe them in the light most favorable to [DeFrancesco]," *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019), and "then determine whether they plausibly give rise to *an* entitlement to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis

added); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); Fed. R. Civ. P. 8(d)(1) ("No technical form [of pleading] is required.").

The SAC pleaded "a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves*, 139 S. Ct. at 1722 (quoting *Hartman*, 547 U.S. at 259). Nothing more was required. The number of "reference[s]" to the "First Amendment" is immaterial. (*See* RB12.) DeFrancesco's husband's speech is implicated because it was the motivation for Appellees' alleged retaliation, but it is not "[t]he only right [DeFrancesco] references." (RB14.) DeFrancesco was fired, not his husband.[5] (*See* RB14.)

It is both irrelevant and not true that DeFrancesco is "merg[ing] an entire body of First Amendment retaliation case law." (RB15.) As the Opening Brief explained, "the combination of two...precedents" can clearly establish a right. (AOB28 (citing *Polanco v. Diaz*, 76 F.4th 918, 930 (9th Cir. 2023)).)

Moreover, courts have already extended "cases involving...the speakers asserting their own free speech rights" to cases where "plaintiffs [are] asserting that actions by the state violated *their* right" because of their "intimate association with the speakers." (RB15.) The Supreme Court has done so under Title VII.

---

[5] For the same reason, there is no standing problem. (RB14.) DeFrancesco is not seeking to vindicate any impairment of his husband's rights.

(RB15.) Those cases not only establish DeFrancesco's right, they clearly establish it for the reasons set forth in the Opening Brief.

The fact that "[t]he District Court did not specifically analyze" the import of those cases is why reversal is required. (*See* RB15.) But as Appellees acknowledge (RB15), the district court still found that

> the First Amendment "'may also be violated where the speech that invoked the government's retaliatory response was not made by the plaintiff [], but rather by a person in a close relationship with the plaintiff, and the government retaliated against the plaintiff for [his] perceived association with the other person and that person's speech.'"

(ER10 (citing *Freeman*, 2019 WL 7905733, at *6).) Although the district court erroneously believed that a Ninth Circuit case was required to *clearly* establish this right, it did not adopt Appellees' position that there is *no* right to be free from retaliation for a spouse's speech.

Appellees also misstate *Freeman*, which denied qualified immunity where the plaintiff alleged the defendant failed to promote her because of her husband's criticism of the defendant. 2019 WL 7905733, at *6. Appellees try to distinguish *Freeman* because the husband was also a plaintiff (RB15); but that had no impact on the court's analysis, which characterized the husband's claim as "exactly the same, and...analyzed under the same standards" as the plaintiff's. 2019 WL

7905733, at *6 n.3 (citation omitted).[6]

Appellees' repeated claims that DeFrancesco "abandoned" his First Amendment claim should be rejected. (RB14-15, 20-21, 29, 37.) During the last appeal, Appellees took the opposite position and argued that DeFrancesco had *only* alleged a violation of his First Amendment right of association and had waived a speech-based First Amendment claim. (FER43.) Now, Appellees insist that it is the "association" claim that is waived. Appellees continue to flip-flop, but DeFrancesco's allegations have not wavered: Appellees admit he has consistently "defined" and "described" his claim. (*See* RB12.)

### 3. Appellees Fail To Distinguish The Caselaw That Clearly Established DeFrancesco's Right

Next, Appellees argue that even if DeFrancesco alleged a First Amendment right, existing caselaw did not "clearly establish" it. (RB17-29.)

As an initial matter, DeFrancesco did not "concede[] there is no controlling

---

[6] Appellees also state *ipse dixit* that neither of the cases relied on by *Freeman* "support[] [DeFrancesco]'s claim." (RB16.) Yes they do. The Opening Brief already explained that the Ninth Circuit determined in *Biggs v. Best, Best & Krieger*, 189 F.3d 989 (9th Cir. 1999) that family members have coextensive rights when one is terminated for the First Amendment-protected activity of another, although their claims were dismissed on a narrow ground not relevant to this case. (AOB33-34.) Similarly, *Horstkoetter v. Department of Public Safety* affirmed that it violates a public employee's constitutional rights to punish them for their spouse's protected speech. 159 F.3d 1265, 1276 (10th Cir. 1998).

authority" on this question. (*See* RB17.) The Opening Brief argued that Supreme Court and Ninth Circuit precedent sufficiently illuminated the contours of the First Amendment's prohibition on speech-based retaliation that a more specific case was unnecessary. (AOB29-30); *Hope v. Pelzer*, 536 U.S. 730, 739, 741 (2002). Appellees acknowledge that "the mere application of settled law to a new factual permutation" does not trigger qualified immunity. (RB18 (quoting *Porter v. Bowen*, 496 F.3d 1009, 1026 (9th Cir. 2007)).)

Appellees' demand for closer precedent is not persuasive. Appellees suggest the well-settled rule that "there does not need to be prior precedent directly on point factually" should be limited to Fourth and Eighth Amendment cases. (RB18.) This defies logic. Courts are generally hesitant to deny qualified immunity in such cases because "[t]here are countless confrontations involving officers that yield endless permutations of outcomes and responses." *Sharp v. County of Orange*, 871 F.3d 901, 912 (9th Cir. 2017) (quoted AOB41). In contrast, the First Amendment's anti-retaliation principle is well defined. Indeed, there are few concepts more black letter than the Constitution forbids the government from punishing free speech. (*See* AOB29-30, 41.)

*Lum v. Jensen* (discussed RB18) does not require a different result. There, the issue was whether a plaintiff's discharge from public employment violated his due process rights. 876 F.2d 1385, 1387 (9th Cir. 1989). The Court applied

qualified immunity after noting that "[a]t the time of Lum's termination, there was a conflict among the circuits that had reached the issue and the law was unsettled in this and remaining circuits." *Id.* at 1389.

Here, Appellees do not identify a circuit split. And the First Amendment is different: regardless of ambiguities under the Fourteenth Amendment, the Supreme Court held two decades before *Lum* that a "college['s] refus[al] to renew the [plaintiff's] contract on an impermissible basis—as a reprisal for the exercise of constitutionally protected rights[—]present[s] a bona fide constitutional claim." *Perry*, 408 U.S. at 598.

Appellees dismiss *Perry* and its progeny as "unhelpful, as [DeFrancesco] was <u>not</u> the speaker." (RB 20.) However, Appellees' caselaw does not show this distinction means "[n]o reasonable official would know" that terminating DeFrancesco for his husband's speech was wrong. (RB20.)

Appellees rely on *Wasson v. Sonoma County Junior College* as stating that "there can be no First Amendment cause of action where there was no speech by the plaintiff." (RB20 (citing 203 F.3d 659, 663 (9th Cir. 2000)).) But Appellees fail to acknowledge that *Wasson* reached that conclusion "because [the plaintiff] has established no relationship between herself and the anonymous author." 203 F.3d at 663. *Wasson* thus helps DeFrancesco.

Appellees also argue that DeFrancesco "offer[ed] no analysis demonstrating

that the Supreme Court or the Ninth Circuit would have reached the same result as the...cases supportive of his claim." (RB19-20.) He did: his Opening Brief explained that the Supreme Court had "little difficulty concluding" that spousal retaliation for speech violated the similar provisions of Title VII, *Thompson*, 562 U.S. at 173 (discussed AOB34-35), and, in addition to *Wasson*, this Court has agreed that family members can state a First Amendment claim even when they did not personally engage in the First-Amendment protected activity, *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 998-99 (9th Cir. 1999) (discussed AOB 34).

In total, the Answering Brief cites seven cases as defeating the "clearly established" nature of DeFrancesco's right to be free from speech-based retaliation. They are easily distinguishable:

- *Walker v. Jemez Mountain School District* (cited RB22 n.5): The "adverse action" asserted by the plaintiff was the revocation of his high-school diploma after the district learned his mother, a teacher, had given him credit for uncompleted work. 2020 WL 3402058, at *1 (D.N.M. June 19, 2020). The court did not "reject[]" the plaintiff's reliance on *Nailon*, but the plaintiff had only cited that case. *Id.* at *9. There are more, as the Opening Brief demonstrates. *See id.*

- *Colonies Partners LP v. County of San Bernadino* (cited RB22 n.5): A property developer alleged that the county retaliated against it by initiating a fraudulent investigation in response to the plaintiff's legal settlement and various

political donations. *See* 2018 WL 6074577, at *7 (C.D. Cal. July 12, 2018). The court stated that *Thompson* and *Nailon* stood for the principle that third-party reprisals may be actionable, but noted that "[i]n all of these cases, the third party who was adversely affected or whose actions led to reprisal against the plaintiff enjoyed a familial relationship with the plaintiff, a far cry from the business and political relationships at issue here." *Id.* at *9. Once again, this case helps DeFrancesco.

- *Gaines v. Wardynski* (cited RB28): There, the Eleventh Circuit agreed that allegations that the plaintiff was passed over for a promotion because of her father's free speech stated a First Amendment violation but held the plaintiff's right was not clearly established in *2013*. 871 F.3d 1203, 1208-09 (11th Cir. 2017). Thus, *Gaines* adds to the body of Circuit decisions clearly establishing the existence of this right by *2019*. The Eleventh Circuit also held that *only* controlling Supreme Court or Eleventh Circuit caselaw can clearly establish a right for qualified immunity purposes—which neither this Court (nor the Supreme Court) require. *Id.* at 1209; (AOB 26-29); *e.g.*, *Moonin v. Tice*, 868 F.3d 853, 868 (9th Cir. 2017) ("relevant decisions of other circuits, state courts, and district courts" can clearly establish law); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (a "consensus of cases of persuasive authority" is enough).

- *Smith v. Frye* (cited RB28): the plaintiff brought suit after his mother

was terminated from her public job after he filed for political candidacy. 488 F.3d 263, 265 (4th Cir. 2007). The plaintiff disclaimed any harm from his mother's termination, and neither claimed to have engaged in protected speech. *Id.* at 270-73.

- *Corkern v. Hammond City* (cited RB37): a public employee filed suit on the grounds that the police chief had retaliated against him and his wife after the husband filed a complaint. 2013 WL 4434417, at *1 (E.D. La. Aug. 14, 2013). Like *Walker*, the plaintiff cited only *Adler*, and the district court concluded that one case did not constitute a "consensus of cases of persuasive authority." *Id.* at *4. However, the question was whether the right was clearly established in 2010—a decade before DeFrancesco's termination—and the plaintiff and court were wrong that "no other circuit court has recognized" this right. *See id.*; (AOB30-34 (discussing other cases).)

- *Vigil v. Tweed* (cited RB37-38): the plaintiff was the person engaged in speech, but the court found his speech wasn't protected by the First Amendment. 2019 WL 2411740, at *10 (D.N.M. June 7, 2019). The court distinguished his reliance on *Adler* because the plaintiff "concede[d] that []his particular 'freedom of association' claim does not implicate 'another constitutional right' such as free speech." *Id.* at *11.

- *Nittoli v. Morris County Board of Chosen Freeholders* (cited RB38):

665719.8                                    23

The court affirmed the existence of a First Amendment right of association, and that a father-daughter relationship falls "within the category of intimate relationships protected by the Constitution," but dismissed for lack of sufficient supporting factual allegations. 2007 WL 1521490, at *7 (D.N.J. May 22, 2007).

Meanwhile, Appellees fail to distinguish the cases from the Opening Brief. Appellees' strategy of arguing the cases were wrongly decided goes nowhere. (RB21 (calling *Nailon* "suspect"); RB22-23 (characterizing courts' reliance on *Lewis* "misplaced"); RB23 (arguing *Lewis* erred in relying on Title VII caselaw in finding a First Amendment retaliation claim based on familial association was clearly established). In discussing the district court's similar analysis, the Opening Brief pointed out that there is no law supporting this logic, which would allow government officials who act contrary to a clear holding of a case to claim qualified immunity so long as they later argue the case should have come out differently. (AOB24 n.2.)

This kind of "unpredictable" rule is anathema to the twin purposes of qualified immunity—providing fair notice to public officials, on the one hand, and "deterring public officials' unlawful actions and compensating victims of such conduct," on the other. *See Elder*, 510 U.S. at 515.

Appellees' argument that Title VII retaliation cases have "no bearing on whether a First Amendment right is clearly established" is similarly unpersuasive.

665719.8                                           24

(RB23-25.)  They assert that *Coszalter v. City of Salem* does "not support [DeFrancesco]'s argument" (RB24) but ignore that, in that case, this Court (1) cited Title VII caselaw as "analytically comparable" and (2) denied qualified immunity on a First Amendment claim, holding that by 2000 "both the constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech were clearly established."  320 F.3d 968, 976, 979 (9th Cir. 2003).  One judge wrote separately to "stress" that "no government official can trivialize the First Amendment" and "even an act of retaliation as trivial as failing to hold a birthday party for a public employee" would violate the First Amendment if "intended to punish her for exercising her free speech right."  *Id.* at 979 (Ferguson, J., concurring).

The caselaw speaks for itself, and Appellees' ticky tack arguments do not move the needle on whether the First Amendment clearly prohibited Appellees from firing DeFrancesco for his husband's speech.

### 4.    Appellees Are Not Entitled To Qualified Immunity Because Of Uncertainty In Fourteenth Amendment Caselaw

Appellees next contend that DeFrancesco's right is not clearly established because there is "uncertainty" as to whether it emanates from the First or Fourteenth Amendment.  (RB29-31.)  This argument is contrary to law and irrelevant.

The Supreme Court and the Ninth Circuit have affirmed the existence of a First Amendment right to association. *See Keates*, 883 F.3d at 1236 ("[t]he First Amendment...protects 'family relationships" under *Roberts v. United States Jaycees*, 468 U.S. 609, 619 (1984). and *Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987)); *accord Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001). The Ninth Circuit continues to uphold a First Amendment right to intimate association under this precedent. *E.g.*, *Mann v. Sacramento Police Dep't*, 803 F. App'x 142, 144 (9th Cir. 2020) ("We therefore remand for consideration of Plaintiffs' First Amendment claim under the standard set forth in *Rotary Club* and its progeny.").

Appellees' caselaw is not to the contrary. At issue in *Erotic Service Provider Legal Education & Research Project v. Gascon* (RB30) was whether a particular relationship was constitutionally protected, which this Court analyzed under the Fourteenth Amendment. *See* 880 F.3d 450, 459 (9th Cir. 2018) (sex worker and client). In contrast, the associational rights of married partners is beyond dispute. To the extent DeFrancesco may have rights under the Fourteenth Amendment in addition to the First Amendment, that doubles Appellees' liability not eliminates it entirely. (AOB32 (citing two cases where claims for unwarranted interference with right to familial association alleged violations under the First and Fourteenth Amendment); *see also Sampson*, 974 F.3d at 1021 ("the Fourteenth

Amendment" and the "First Amendment...are two separate rights").

In any event, even where "[t]he law in this circuit is unclear" about the appropriate test, it will not confer qualified immunity if the right is clearly established. *See Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989); *see also P.B. v. Koch*, 96 F.3d 1298, 1303 n.4 (9th Cir. 1996) (denying qualified immunity despite ambiguity in the appropriate "home" for the plaintiffs' right to be free from excessive force).

Here, Appellees only locate "uncertain[ty]" in the law by reaching outside of the issue presented: retaliation for a spouse's speech. (RB30-31.) But as Appellees concede, the qualified immunity inquiry must "be undertaken in light of the specific context of the case, not as a broad general proposition." (RB19 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).)

For example, Appellees try to manufacture intra-circuit conflict by mischaracterizing *Hartwell v. Houghton Lake Community Schools*, 755 F. App'x 474 (6th Cir. 2018) and *Matusick v. Erie County Water Authority*, 757 F.3d 31 (2d Cir. 2014) as discordant with *Adler*, *Adkins*, and the like, which Appellees admit "recognize[d]" a First Amendment right of intimate association that provides protection from retaliation for the First Amendment protected speech of a spouse.[7]

---

[7] Contrary to Appellees' claim, neither of the *Gaspers* plaintiffs asserted that they had engaged in protected speech. *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 413 (6th Cir. 2011) ("plaintiffs...allege that they were retaliated against on the

(RB29-30.)

*Hartwell* and *Matuscik* addressed different issues. In *Hartwell*, the Sixth Circuit granted summary judgment to a school that terminated a teacher for poor performance and other misconduct, finding doing so did not unduly interfere with her right to associate with her stepchildren that attended the school. 755 F. App'x at 479 (cited RB39). There was no speech or retaliation at issue.

*Matusick* did not involve speech either. The Second Circuit held that a fiancé's First Amendment right was violated when he was fired due to his relationship, but it was not "clearly established" in 2004 that fiancé relationships were constitutionally protected. *Matusick*, 757 F.3d at 60 (cited RB30-31). Thus, *Matusick* actually supports DeFrancesco's claim that it was clearly established by 2019 that retaliation against a spouse violates the First Amendment.

### 5. Appellees' Remaining Arguments Go Nowhere

Parts B.4 and B.6 of the Answering Brief regurgitate arguments made elsewhere and already addressed above: that (1) "the right at issue is not even defined" (RB32-35, 38), (2) "retaliation" is not an "independent right under the First Amendment" (RB 37), (3) DeFrancesco is burden shifting by pointing out Appellees have not supported their qualified immunity defense with caselaw

---

basis of their marriage"); (RB29-30).

(RB31, 33), (4) DeFrancesco has no clearly established First Amendment right that was violated when Appellees fired him for his husband's protected speech (RB33-34, 38-39), and (5) DeFrancesco abandoned an "association" claim (RB37).

The cases that Appellees claim in Part B.6 "rejected" *Adler* "and [found] that the right [DeFrancesco] asserts is not clearly established" (RB37-38) do not say that, and are already distinguished *supra*, pages 26-27. *Hartwell* (RB38) is already discussed *supra*, pages 28-29.

That leaves *Presley v. Board of School Directors*, 2014 WL 1468087 (C.D. Cal. Apr. 15, 2014) which Appellees assert "declin[ed] to follow *Adkins*" on the grounds that intimate association claims arise under the Fourteenth Amendment. (RB38.) Appellees are grasping at straws: *Presley* involved a motion for more definite statement. 2014 WL 1468087, at *2. The plaintiffs, a married couple, alleged that the defendants suspended and fired the wife "to retaliate against [the husband] for exercising his First Amendments Rights to speak on a matter of public concern," to which the court stated: "The First Amendment protects a public employee from unjustified disparate treatment for speaking as a citizen on a matter of public concern" and denied the motion. *Id.*

These sections are more telling for what they fail to dispute: that "[t]his Court has held that fair warning can be established 'even without a body of relevant case law'" (AOB 31 (citation omitted)), and courts have "held that [a]

plaintiff has stated a First Amendment free speech retaliation claim despite the undisputed fact that the plaintiff was not the speaker" (RB34-35). This is sufficient to deny qualify immunity, and the Court should reverse.

### C. DeFrancesco Plausibly Alleged Retaliation By Appellees

Appellees' fallback argument that DeFrancesco did not plead any actionable retaliation also fails.

With respect to Dake, Appellees argue that "[i]t is not plausible that Dr. Dake terminated [DeFrancesco] in retaliation for protected speech of which Dr. Dake was unaware." (RB41.) However, the SAC pleads that Dake *was* aware. As Appellees concede, "[t]he SAC alleged...that President Robbins told Dake that Goldman had been a vocal and firm advocate against Dake" and that "Goldman's husband, DeFrancesco, was an executive in UAHS and that Dake had the authority to fire him." (RB41 (quoting ER-28, ¶47).) It is thus not true that "[t]he SAC contained no...allegations" about Dake's knowledge of Goldman's speech, or that DeFrancesco is relying on the "mere timing of the allegedly retaliatory actions." (RB41.)

The fact that "Dake did not attend the...meeting" where Goldman blew the whistle on Robbins' cronyism, or even "work for the University at that time" is immaterial. (RB41.) Appellees cite no law for their made-up rule that Dake must have heard the protected speech firsthand to be liable.

Appellees' argument about Robbins fails for the same reason. Appellees claim that "[t]he SAC did not assert that President Robbins told Dr. Dake about Goldman's allegedly protected speech[.]" (RB44.) That is exactly what the SAC alleges. (*See* ER28, ¶47.) Appellees likewise acknowledge that the SAC alleges that "Goldman complained to President Robbins about Dr. Dake's supposed harassment." (RB44; *see* ER29 ¶50 ("Goldman complained to President Robbins on behalf of DeFrancesco. Robbins claimed that he would handle the problem by speaking with Dake, but the targeting and harassment did not stop.").) Contrary to Appellees' claim (RB42), "[t]he *Twombly* plausibility standard...does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted).

## III. CONCLUSION

The Court should reverse the decisions below and remand for further proceedings.

DATED:  April 1, 2024          MILLERBARONDESS, LLP

By: _____

LAUREN M. BRODY
Attorneys for APPELLANT
ANTHONY T. DEFRANCESCO

665719.8                                    32

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that, pursuant to Fed. R. App. P. 32(g)(1), the attached brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and 9th Cir. R. 32-1(a) because it contains 6,961 words, as indicated by Microsoft Word word count, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it uses a proportionally spaced Times New Roman typeface in 14-point font.

DATED:  April 1, 2024      MILLERBARONDESS, LLP

By: _____

     LAUREN M. BRODY
     Attorneys for APPELLANT
     ANTHONY T. DEFRANCESCO